Williams, J.
 

 The subject of the controversy here is the validity of the chattel mortgages made by Owen McGrath, in which is involved his authority to make them against the known wishes of the defendant Catherine Cowen. One of the grounds on which it is sought to sustain them is, that when they were executed, the property covered by them belonged to the partnership which had been formed between the plaintiff and James Cowen, the business of which was then being carried on by the former, as the surviving member of the firm, who, as such, it is claimed, had the absolute power of disposition of the assets, without the concurrence or consent of the defendant. It is contended,that the petition contains proper allegations showing this to be the nature of the partnership, the character of the business, and the ownership of the property, and that the defendant is estopped from controverting them, by her consent, as appears of record, to the appointment of the receiver. Or, on the other hand, if the firm consisted of the plaintiff and defendant, the latter is estopped by the order appointing a receiver to deny the execution of the mortgages
 
 *401
 
 by that firm. The record, however, will admit of neither of these interpretations.
 

 1. There can be no doubt that, upon the death of James Cowen, the partnership between him and McGrath was immediately dissolved, and the exclusive possession and control of its entire assets became vested in the survivor for „the purpose of closing up its affairs; so that, if no new partnership relation was thereafter entered into by Mc-Grath, there was none to be dissolved, nor any occasion for an application by him for a receiver. It also appears from the petition that, by the will of the deceased partner, his executrix was directed to continue the business with McGrath, and authorized to make all necessary and proper contracts for that purpose ; and that, in pursuance of the authority conferred by the will, the partnership business was continued and carried on, under an agreement between McGrath and the defendant individually, and as executrix of the will, from the death of James Cowen and the probate of his will until the time of the filing of the petition. As a partner cannot possibly continue to be a member of a firm after his death, any agreement with his executor, or other person having a beneficial interest in the share of the assets which belonged to him, for the continuation o.f the business thereafter with the surviving partner, is, necessarily, the formation of another partnership, the terms of which, when not otherwise expressly agreed upon, may be implied, from the manner of conducting the business, to be the same as those of the former partnership. “What is inaccurately called provisions against the dissolution of the partnership is an agreement that, if either
 
 *402
 
 party dies, Ms property shall remain in the firm and in the business, for the benefit of his children ; or that his children, or some of them, or some other person, shall immediately on his death take his place in the firm, and become a partner in his stead. All these agreements and arrangements and all that can be made for a similar purpose, are, in' fact, only bargains for the creation of a new partnership when the old one ceases to exist. And so, too, all arrangements or contracts which may be made between the surviving ¡Dartners and the representatives or appointees of the deceased have for their effect only the formation of a new partnership, which, upon some terms or other, takes the stock, and carries on the business of the old one.” Parsons on Partnership, section '343. The effect cannot be otherwise of any arrangement for a continuation of the business, between the surviving member of the firm and the executor or other appointee under the will of the deceased member, made in pursuance of the will; for, upon the death of the partner, his personal estate, including his interest in the partnership, devolves upon his executor and vests in the beneficiaries of the will, and becomes their property.
 

 The plaintiff, in unequivocal terms, recognizes the defendant as a copartner with him in the business and property in question. He alleges in Ms petition, “that he has heretofore demanded of the defendant, both as executrix as aforesaid and individually, a dissolution of said firm, which she refused and now refuses, and he now demands as of right a dissolution thereof ; that he has never been able, upon his demand for a dissolution, to agree with the defendant upon the terms thereof, or to secure her assent or concurrence thereto, and can not now
 
 *403
 
 agree with her thereon; that he has heretofore demanded of the defendant to join with him in an assignment for the benefit of creditors, by said firm, of all of its property, which she has refused and still refuses ; that the rights and interests of this plaintiff and of all the creditors of said firm, and the rights of the consignors and owners of the goods and accounts in said wholesale store, will be endangered and sacrificed unless all the property belonging- to said firm be placed in the possession of a receiver, to be appointed by this court; that the plaintiff is entitled to have said firm dissolved, and its property appropriated to the payment of its debts.” If, therefore, any estoppel arises from the averments of thepetitionandtheappointmentof the receiver as therein demanded, it is such as precludes a denial by the plaintiff of the existence of the partnership between him and the defendant, and of her rights as a member of the firm. In order to have a dissolution of a partnership and a receiver, it is essential that there be a partnership to be dissolved ; and the members are necessary parties to an application for the appointment of the receiver. The appointment, therefore, is necessarily a determination of the existence and membership of the firm involved in the application, and, it may be of such other facts as are essential to the order of appointment, but no further.
 

 2. The purpose of the appointment is to place the assets in the control of a disinterested person, to be disposed of to the best advantage of the members and creditors of the firm, so that their rights in the fund may be secured as they may be made to appear. But the appointment, though made by consent, is not a confession of all the alie
 
 *404
 
 gations of the petition, so as to forestall inquiry into the rights of the parties in the fund, upon issues raised by proper pleadings. The determination of questions concerning the execution and validity of the chattel mortgages, and of the rights of the parties and of creditors with respect to them, was not necessary to the order of the court appointing the receiver ; nor does the record show any adjudication of them when the order was made; nor did they properly enter into the appointment. Such questions relate to the distribution of the fund, rather than to the selection of a person to preserve it; and the proper method of presenting them is by answer or other appropriate pleadings, for which, when the appointment was made, no party in interest was in default ; and their adjudication may be appropriately had, as was the case in the court below, upon the final distribution of the fund.
 

 3. The mortgages were assailed on the ground that the manner of their execution, under the attending circumstances, was such as to render them ineffectual to create liens on the property included in them, which was that of the partnership then existing between the plaintiff and Catherine Cowen; and on this ground they were held invalid by the circuit court. There was no finding of the facts by that court; but the case is here upon a bill of exceptions purporting to contain the evidence, which, it is claimed, is without substantial conflict, and its review is sought hereupon the theory that the undisputed facts, or those established by uncontradicted testimony, require the reversal of the judgment. In such a case, as this court is not required nor expected to weigh the evidence, it will be presumed, in support of the judgment,
 
 *405
 
 that all facts necessary to sustain the judgment, which the evidence fairly tended to prove, were established to the satisfaction of the trial court. And, within that rule, the material facts of the case, as shown by the record, may be stated as follows: On the 20th day of May, 1893, the co-partnership, then consisting of the plaintiff and Catherine Cowen, was engaged in the retail boot and shoe trade, having two stores on Fifth street, in the city of Cincinnati, and was the owner of the stocks of goods in both stores, and of the counters, shelving, furniture, and fixtures used in conducting the business, and was also engaged in handling boots and shoes on commission at a store on Pearl street; but the goods of that store belonged to the consignors. The firm was then, and for some time had been insolvent, in the sense that its property was insufficient to pay its debts, though it still had good credit, and was actively engaged in the prosecution of its business. On that day, which was Saturday, the plaintiff caused to be prepared, ready for execution, the four chattel mortgages in question, which cover all the tangible property then belonging to the firm, including the counters, shelving, and other furnishings and fixtures necessary for, and used in carrying on its business, and signed the same in this form: “In witness whereof, the said Cowen & McGrath, a firm, and Owen Mc-Grath, surviving partner of said firm, and Owen McGrath, individually, have hereunto set their hands, this 20th day of May, A. D., 1893. “Cowen & McGrath by Owen McGrath, Owen McGrath, surviving partner of Cowen & McGrath. Owen McGrath.”
 

 At the same time, the plaintiff had prepared, ready for filing, the petition for the dissolution of
 
 *406
 
 the partnership and appointment of a receiver, which he subsequently filed, as hereinafter stated. On the day the mortgages were signed, they were placed in the hands of the mortgagees, which was the first intimation to them that there was any intention to make them. At that time none of the claims secured by the mortgages were due, except, it may be, a small part of one of them, and none of the creditors to whom the mortgages were made had requested security, or were pressing for the payment of their debts. There had been no previous understanding or agreement that those creditors were to have security, nor was there any stipulation for delay, or extension of credit, or other change whatever in the situation of the mortgagees, on account of the security offered, but the giving of the mortgages was the voluntary and unsolicited act of the plaintiff. The mortgagees, however, made the affidavit on the mortgages which the statute requires, and then immediately surrendered them to the plaintiff, who retained them in his possession and control until the following Monday morning, when, about nine o’clock, he caused them tobe filed with the recorder, and immediately thereafter filed the petition in the court below. The mortgages appear to be without a sufficient condition of defeasance, and contain a stipulation authorizing the mortgagees to take immediate possession of the property, which they did as soon as the mortgages were filed, through the attorney who then represented them, as well as the plaintiff; and the stores were at once closed, and possession delivered by them to the receiver appointed upon the filing of the petition. The avowed purpose of the plaintiff, in' the course pursued bjr him, was to terminate the part
 
 *407
 
 nership, place its property beyond the control of the firm, and insure the preference of the mortgagees, all of which was known to them at the time; and the whole proceeding was without the assent or knowledge of Mrs. Cowen, who resided in rooms above one of the stores, was accustomed to participate actively in the business of the firm, and, at all business hours of the day on which the mortgages were prepared and signed, was present at the store, engaged with the plaintiff in attending to the business as usual; but his actions and designs respecting these transactions were purposely concealed from her, for the apparent reason that she had re-fused to unite in a general assignment of the partnership effects for the benefit of its creditors, and the plaintiff knew she was opposed to any step which would put an end to the partnership, or interrupt its business. The property covered by the mortgages, which, as before stated, constituted substantially all theproperty of thefirm, is insufficient to satisfy the indebtedness intended to be secured by them, and there are other creditors to a large amount who are without security of any kind.
 

 It is' obvious, from these facts that the mortgages, if sustained, amounted to a complete and final-disposition of all the partnership effects, such as at once and inevitably put an end to the partnership, by the act and according to the will of the plaintiff alone, not merely without the consent or concurrence of his copartner, who was easily accessible and could have been consulted, but in direct violation of her known wishes on the subject. In the making of such a disposition of the partnership property, neither partner has any greater right than the other to have his plan and
 
 *408
 
 desires observed and carried out, but each is entitled to an equal voice; and the observance of that g’ood faith which the partnership relation enjoins upon its members in their conduct toward each other requires that, before attempting such disposition by one partner, the other, when accessible, shall be consulted, and given an opportunity to protect himself by forbidding its completion, or making his objections to its consummation. And any secret arrangement by one partner, in a transaction of that kind, by which it is sought to frustrate the wishes of. the other, or deprive him of his equal right, whether designed to secure to the former some individual advantage or not, is a fraud on his copartner, and in excess of his implied authority as a member of the firm.
 

 The implied authority of a partner in the transaction of the partnership business is not a consequence of his interest in the partnership property. That belongs to the firm, and, in case of insolvency, is regarded as a trust fund for the creditors. The individual interest of the partner amounts to nothing more than his share of any surplus that may remain after the debts are paid, and the rights of the partners, as between themselves, are adjusted. This interest each partner is free to dispose of without the consent of the others. But his power to bind them or the firm in the disposition of its property rests upon the ground of agency which arises from the presumed assent of the members in the formation of the partnership; and, in order to be binding upon them, his acts must be within the limits set by them on his authority, or as implied from the nature of the partnership business. The general rule, in the absence of special agreement or ratifica
 
 *409
 
 tion, is that each partner is a general agent of the firm for the purpose of carrying on its business in the usual and ordinary way,, and what is necessary for that purpose is the limit of the authority. “The nature of every business implies certain intrinsic restrictions, to exceed which requires express authority, and which a third party dealing with a partner must observe. The powers of the partner do not extend beyond what may be fairly regarded as coming within the ordinary necessities of the business. ” Bates on Partnership, section 317. “The act of one partner, to bind the firm, must be necessary for the carrying on of its business. If all that can be said of it was thatitwas convenient, or that it facilitated the transaction of thebusiness of the firm, that is not sufficient, in the absence of evidence of sanction by .the other partners. Nor, it seems, will necessity itself be sufficient if it be an extraordinary necessity. "What is necessary for carrying on the business of the firm under ordinary circumstances, and in the usual way, is the test.” Lindley on Partnerships, "‘page 126. While, within this rule, one member of a partnership may, in the usual and ordinary course of its business, make a valid sale, or pledge by way of mortgage or otherwise, of all, or part of its effects intended for sale, to a
 
 bona fide
 
 purchaser or mortgagee, without the consent of the other members of the firm, it is not within the scope of his implied authority to make a final disposition of all of its effects, including those employed as the means of carrying on its business, the object and effect of which is to immediately terminate the partnership, and place its property beyond its control. Such a disposition, instead of being within the scope of the partnership business, or
 
 *410
 
 in the usual and ordinary way of carrying- it on, is necessarily subversive of the objects of the partnership, and contrary to the presumed intention of the partners in its formation. As was said by Strong-, J., in
 
 Sloan
 
 v. Moore, 37 Pa. St., 217, 223. “While a contract of partnership constitutes each of its members an agent for the others,.it is only for the purpose of carrying on the partnership, and not of destroying it. Denuding the finn-of its property is a thing not contemplated in carrying on a partnership, and consequently no agency for such a purpose is intended to be created. When, therefore, one partner is at hand, and might assent, but does not, it is quite unreasonable to presume that he has empowered his copartner to do an act destructive of the purposes for which the firm was established.” Upon the same principle, the courts hold that it is not within the power of one member of a firm to make an assignment of its effects for the benefit of its creditors, without the consent of other members who are accessible for consultation. It is not because such a transfer is called an assignment, or is made in that form, that is held to be beyond the power of the partner, but because it operates to immediately terminate the partnership and place the property beyond its control. Any other form or method of transfer which has the same effect, and is made for the like purpose, must, for the same reason, be equally beyond the partner’s implied authority. In
 
 Osborne
 
 v. Barge, 29 Fed. Rep., 725, 729, Mr. Justice Shiras said of a transaction in substance like the one under consideration that: “If a mortgage is given upon the stock in trade of a partnership, and under such circumstances that the giving thereof prac
 
 *411
 
 tically terminates the business of the firm, no reason is perceived why the assent of both partners is not as essential to give validity to such an instrument, as in the case of a- general assignment. The mortgage executed to complainants covered practically all the stock of the firm, came due in twenty-four hours after its date, and gave the mortgagees full power to take immediate possession of the property, and to sell the same for the payment of the mortgage debt. The practical effect, therefore, of the instrument, would be to terminate the business of the firm, and to hand over the .control and right of disposition of the partnership property to a third party. The right to thus destroy the life and business of the firm is not possessed by one of the partners, and, to be valid, it must appear that such an instrument was executed by the authority of all the partners.”
 

 The difference between the question here involved and that considered at some length in the opinion in
 
 Cross
 
 v. Oarsten, 49 Ohio St., 548, 565, is manifest and substantial. There, the instruments whose validity and effect were in question were executed in pursuance of an understanding between the two members composing the firm, and were in fact executed by both. The power of one partner to perform the act without the other’s consent was not involved, while that is the precise question here presented. Though the mortgages made by the plaintiff may not constitute a technical assignment in trust, their execution was designed to accomplish all the purposes of a preferential assignment, and, if sustained, all the consequences of such an assignment must ensue; and therefore, with respect to the power of the plaintiff to execute them in
 
 *412
 
 behalf of the firm, contrary to the wishes of his copartner, or without her consent, the question is practically the same as in ease of a formal assignment. A general assignment, so made, for the equal benefit of the creditors, would be less objectionable in the eyes of a court of equity than a transaction like the one before us ; for equity looks with disfavor upon any disposition of an insolvent debtor’s estate which discriminates between equally meritorious creditors, and is reluctant to disturb any which insures equality among them.
 

 The mortgagees are not in the position of
 
 bona fide
 
 purchasers, because (1,)
 
 t\iej
 
 were aware of the plaintiff’s purpose in making the mortgages, and co-operated with him in its accomplishment, and the manner of their execution and the attending circumstances were sufficient to advise them that Mrs. Cowen was not participating in the transaction ; and (2,) the mortgages were made voluntarily, without any previous agreement for security, or obligation to give it, and without any extension of credit, or time given for the payment of the indebtedness, or other change in the situation of the creditors to whom they were given.
 
 Lewis
 
 v. Anderson, 20 Ohio St., 281. But, if it were otherwise, the mortgages are not binding- on the firm, nor valid liens on its property, under the established rules for determining the rights of third persons who deal with a partner, and the obligatory effect.of his acts upon the firm and the other partners. In Lindley on Partnerships, *125,126, these rules are stated as follows : “1. That if an act is done by one partner on behalf of the firm, and it was necessary for carrying on the partnership business in the ordinary way, the firm will
 
 prima facie
 
 be liable, although in point of fact the act was
 
 *413
 
 not authorized by the other partners. 2. That if an act is done by one partner on behalf of the firm, and it was not necessary for carrying on the partnership business in the ordinary way, the firm will
 
 prima facie
 
 be not liable. In the first case the firm will be liable unless the one partner had in fact no authority to bind the firm, and the person dealing with him was aware of that want of authority ; whilst in the second case the firm will not be liable unless an authority to do the act in question, or some ratification of it, can be shown to have been conferred or made by the other partners.” Without attempting here a review of the cases cited by counsel for plaintiffs in error, it may be remarked of them generally, that they either lack or possess some feature of importance which distinguishes them from this case. That of
 
 Mabbett
 
 v. White, 12 N. Y., 441, which is mainly relied on in support of the mortgages, is distinguishable from a case like this in the particulars pointed out by Mr. Justice Miller, in
 
 Bowen
 
 v. Clark, 1 Bissell, 128, 136, where he says: “The court of errors of New York, in the case of
 
 Mabbett
 
 v. White, by a vote of five judges to two, expressed the opinion of the majority, that one partner had authority to sell and transfer all the copartnership effects directly to a creditor of the firm in payment of a debt, without the knowledge or consent of his copartner, although the latter is at the place of business of the firm, .and might be consulted, and that such transfer is valid, although the firm is insolvent, and thereby one creditor acquires a preference over the other creditors of the firm. This was in fact a controversy at law between creditors of the firm, and there was evidence, although contradictory, of the subsequent assent
 
 *414
 
 of the non-assenting’ partner. That decision virtually rejects the principle of implied agency, and, in my opinion, it can only be sustained, if at all, upon the ground which was not stated by the majority, that in a controversy at law between creditors, one creditor cannot object to the validity of such an assignment to another creditor, but that the non-assigning partner a]one can make the objection.” And this distinction was probably in the mind of the judge who prepared the opinion in
 
 Mabbett
 
 v.
 
 White,
 
 when he said : “We do not say that in no case would equity interfere in favor of the firm against a third person, in case of a contract of sale by one member. But this is an action at law between creditors, and the jury have negatived all fraud in fact on the part of the plaintiff. ’ ’
 

 Here the non-assenting- partner makes objection to the unauthorized acts of the plaintiff; and the assertion by her, of her right to avoid the mortgages inures to the benefit of the partnership creditors, who 'may avail themselves of her equity, to secure an equal distribution of the partnership fund.
 

 We discover no error in the record which requires a reversal of the judgment below, and it is affirmed.
 

 Judgment affirmed.