VALLEY SPRINGS HOLDING CORP., Respondent, v. CARLSON, et al, Appellants.

(227 N. W. 841.)

(File No. 6695. Opinion filed November 26, 1929.)

*Johnson & Simons,* of Sioux Falls, for Appellants.

*B. O. Stordahl,* of Sioux Falls, for Respondent.

FULLER, C. This appeal involves a question as to the priority of liens upon or rights in certain crops. The defendants, C. T. Swanson and August Swanson, herein referred to as the Swansons, were the owners of a farm in Minnehaha county. In September, 1925, they entered into a contract with defendants Arvid C. Carlson and Arthur Carlson, herein referred to as the Carlsons, by which the parties agreed to become partners in the business of farming and live stock production; it being declared in the agreement that the Swansons thereby placed the said farm to the uses of the partnership during the term of the contract. The partnership, according to the contract, was to continue until terminated at

the option of either party. The relation between the partners for the following farming season of 1926 was also evidenced by a lease. The Carlsons, being indebted at the time to the Minnehaha County Bank, executed to the bank a chattel mortgage covering their interest in the partnership property, including crops to be grown on the premises in 1926; but this grain was fed to the live stock and demand for the same was never made by the bank. The bank later suspended operations, and the plaintiff, Valley Springs Holding Corporation, succeeded to its ownership of the Carlson paper. On March 3, 1927, the Carlsons executed and delivered to the bank, and there was assigned to plaintiff, a chattel mortgage covering an undivided one-half interest in the property aforesaid and in all crops to be grown during the year 1927 on the above-mentioned farm of the Swansons, which mortgage was at once filed for record. This mortgage secured indebtedness previously existing. On the following day the Swansons and Carlsons entered into a written contract for the termination and cancellation of their partnership agreement. Therein they agreed to a public sale of the partnership property and that one-half of the proceeds of the sale should be delivered to the plaintiff. On March 16, 1927, the sale was had and the Swansons bid $4,200 for the one-half interest of the Carlsons in the property, which sum was turned over to the plaintiff as a payment on account of the indebtedness of the Carlsons to plaintiff. At this auction no interest of the Carlsons in the crops to be grown during the year 1927 was sold or offered for sale. There is a fair inference deducible from the evidence that no crops, at the time, had been planted, and that subsequent events were brought about to enable the Swansons to safely finance the Carlsons for seed and other expenses.

Following the auction sale of the partnership property and the termination of the partnership by contract, the Swansons and the Carlsons' on April 1, 1927, entered into a new partnership contract similar to the agreement made in 1925, first above mentioned. The contract also provided that the Swansons should have a first and prior lien upon the share or interest of the Carlsons in the partnership property for all money loaned to the Carlsons by the Swansons or notes signed by the Carlsons in favor of the Swansons, and for all indebtedness due to the Swansons from the Carlsons. It is to be noted that, from the terms of either the former or the later

partnership agreement, the grain produced on the premises was a part of the partnership assets.

On April 2, 1927, the day following the making of the new partnership agreement, the Swansons executed a lease of their farm to the Carlsons, which lease, according to the record, provided, in substance, that the Swansons should have a lien upon, and that they would reserve the title to, all crops produced on said premises in the farming season of 1927, for any and all advances by them made to the Carlsons, and for debts due them from the Carlsons until a division of the grain was had, and that after division the Swansons should retain the share of the Carlsons in the crops as payment for all debts or advances owing to the Swansons from the Carlsons. .

It also appears that on March 17, 1927, on the day following the auction sale, the Carlsons gave to the Swansons a chattel mortgage on their interest in the 1927 crops to secure the sum of $4,200, which amount the Swansons had bid at the sale for the interest of the Carlsons in the partnership property, and which interest, by the new agreement, was turned back into the new partnership by the Swansons as the contribution of the Carlsons. In short, the rights of plaintiff with respect to the interest of the Carlsons in the 1927 crops is evidenced by a chattel mortgage dated March 3, 1927, which was at once filed for record; while the interest of the Swansons therein rests upon a chattel mortgage dated March 17, 1927, a partnership contract dated April 1, 1927, and a lease dated April 2, 1927.

In October, 1927, the plaintiff commenced this action for the foreclosure of its mortgage upon the one-half interest of the Carlsons in the grain produced in that year and upon a few articles of machinery hereinafter mentioned. The trial below resulted in judgment of foreclosure. The portion of the judgment by which appellants are most aggrieved provided for a sale of the one-half interest of the Carlsons in the crops or grain, and provided also for an injunction against the use or consumption of the grain by the defendants pending the sale. By appropriate answer to plaintiff's complaint, the defendants Swanson had alleged their superior rights in the interest of the Carlsons in these crops, by reason of the contract and lease above described; and the decree below adjudicated the rights of plaintiff to be "subject to the provisions and

conditions of the lease or leases between Swanson brothers and Carlson brothers." From the findings and opinion of the trial judge, however, it appears to have been considered that such superior rights as the Swansons may have had were limited to a lien for money advanced according to the terms of the lease—an amount which is undetermined but obviously small. From the judgment as above described, and from an order overruling a motion for new trial, the defendants appeal. Sufficient for disposition of this appeal is a consideration of the partnership contract of April 1, 1927. Plaintiff had a mortgage upon the one-half interest of the Carlsons in the crops to be grown on the premises during that year; but the right of their mortgagors, the Carlsons, to plant or produce crops upon the land could exist only by the consent, authority, or contract of the Swansons, who were the owners of the land. As, on March 3, 1927, the date of plaintiff's mortgage, no lease existed for the year 1927, the rights of the Carlsons depended upon the partnership contract then existing whereby the Swansons had contributed the use of the land to the objects of the partnership. That contract, however, was terminated on March 4, 1927, in strict accordance with the rights of the partners, as expressed in the contract. Although plaintiff's mortgage purported to create a lien on the Carlsons' interest in this portion of the firm assets, it is not apparent that there was, at the date of their mortgage, any 1927 crop in existence. We are unable to find in this record any evidence to support the assumption that between March 4, 1927, and April 1, 1927, the Carlsons had any right whatever to occupy, farm, or raise crops upon this land during the farming season of 1927. On the last-named date the new partnership contract was made by which the farm was again contributed to the use of a firm created to conduct the business of farming and live stock raising. If the rights of the Carlsons to produce or to become interested in the 1927 crops (and, a priori, the lien of plaintiff) rested upon this contract, then it must be observed that its effect was to make the crops produced the property first of the partnership and to appropriate the same to the uses and purposes of the partnership. Turning to that contract to ascertain the specific conditions to which plaintiff's lien is made subservient, we find it a matter of clearest implication from the expressed contractual object of the parties that the grain produced was to be

fed to the live stock. After providing that each of the contracting parties, the Swansons and the Carlsons, should furnish half the feed it was also declared that all live stock, grain and farm products "shall be held on the farm as a partnership holding, and a division shall be made only when a portion or all of the same is sold and turned into money."

It is true that the plaintiff, as mortgagee, had no notice of this contract when it took the mortgage of March 3d, because the contract was not in existence. But the question of notice is without material interest. The real question is one as to when and to what extent legal ownership or a mortgageable title could vest in the mortgagor Carlsons, as the rights of their mortgagee could be of no greater integrity than that of the mortgagors.

■ The rule as stated in Bellows v. Wells, 36 Vt. 599, 602, is as follows: "The owner of the land being also the owner of the fruits or products of it, in parting with the use of it to another, may make such conditions and reservations in relation to the land itself, or the products grown from it, as he chooses, instead of parting with the full right. The principle is the same as that upon which conditional sales of personal property are upheld."

■ It is also elementary that: "Neither partner separately owns, nor has the exclusive right of possession of, any particular articles of partnership property or aliquot part thereof." Tuller v. Leaverton, 143 Iowa, 162, 121 N. W. 515, 136 Am. St. Rep. 756, 758.

■ The real ownership and legal title are vested in the firm, so that the sale or mortgaging of an undivided one-half interest in specific partnership property can neither pass title nor create a lien upon that property.

"It is not within the authority or power of a partner to mortgage or sell his undivided interest in the partnership property to secure his individual debt, and under such circumstances the mortgagee or vendee takes nothing thereunder, except the surplus, if any, after the partnership business has been settled." Malvern Nat. Bank v. Halliday, 195 Iowa, 734, 192 N. W. 843, 847.

"A partner's interest in the partnership [is] his share of the profits and surplus." Laws 1923, c. 296, § 26; 7 U. L. A. p. 40.

■ Up to the time of dissolution and settlement of partnership affairs the right of the Carlsons in specific partnership prop-

erty was not individually assignable except in connection with the assignment of the rights of all the partners in the same property. Id. § 25, subd. (b) ; 7 U. L. A. p. 31 ; McGrath v. Cowen, 57 Ohio St. 385, 49 N. E. 338; Osborne v. Barge (C. C.) 29 F. 725. A conveyance by them of their interest in the partnership would not entitle their assignee, much less their mortgagee, to interfere in the management or administration of partnership business or affairs or to receive anything but the profits of the Carlsons. · Id. § 27 ; 7 U. L. A. p. 41.

It follows that the plaintiff acquired nothing more by its mortgage than the right to succeed to the Carlsons in a distribution of profits and surplus, and that the portion of the judgment below which, in effect, enjoined the defendants from feeding the grain to the partnership live stock was erroneous and without support of any legal principle. Indeed, the injunctive portion of the decree purports to operate upon the Carlsons' so-called *undivided* one-half interest, and thus, for want of division, restrained defendants from feeding any part of the 1927 crops to the stock.

■■ The contract also provided, as above shown, that the Swansons should have a first and prior lien upon the share or interest of the Carlsons in the partnership property for all moneys loaned to the Carlsons and for all indebtedness from them due. At the time of making the contract, the Swansons had advanced $4,200 to pay for the one-half interest of the Carlsons in the former partnership, which interest was contributed for them to the new firm ; and, at the time of trial, the indebtedness of the Carlsons to the Swansons was approximately $8,000. The greater part of the sum above mentioned represented one-half of the costs of cattle for which the Carlsons should have paid. Without the contract provision above mentioned the Swansons were entitled to reimbursement for these sums from the share of profits or surplus which otherwise would be distributable to the Carlsons, and the Swansons were entitled to that reimbursement in precedence of any distribution of profits to the Carlsons or their mortgagee. The amounts above mentioned represented contributions to capital by the Swansons in excess of the amounts which by them should have been contributed. Passing the *personal* liability of one partner to another for excess of firm capital contributed by him, and passing the contract provision for a lien in this case by the Carlsons given the

Swansons, it is important to consider the liability in this respect of the *partnership*. Whatever may be the liability of the partnership must take precedence over the individual liability of either partner to third persons, so far as payment from firm assets is concerned.

Laws 1923, c. 296, § 18, subd. [a], provides in part:

"(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.

"(b) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property.

"(c) A partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance.

"(d) A partner shall receive interest on the capital contributed by him only from the date when repayment should be made."

See, also, 7 U. L. A. p. 27.

As we view the foregoing provisions of the Uniform Partnership Act, the firm itself and, hence, the partnership assets (before any distribution to individual partners) are subjected to a reimbursement of one partner for payments and advances by him made to the firm's capital, in behalf of other partners, beyond the amount for which he may be obligated. Such was the law before the adoption of the act (Bates Law of Partnership, p. 857), and we observe nothing in the new statute calculated to change the rule.

On the questions here presented in respect of the comparative rights of these parties, it must be held that the plaintiff's mortgage could not be asserted as an obstruction to the feeding of the grain to the live stock; and that the defendant Swanson held a right in the Carlsons' interest in the partnership, superior to plain-

tiff's claim, to the extent it would become necessary to apply the same to a reimbursement of excess capital by them contributed, and interest thereon as provided by section 18, supra.

As we have already dealt with the injunction provisions in the decree, it remains a question whether, in view of the priorities above decided, there is any error in the decree in so far as it directed a foreclosure sale. It provides for sale of: "The undivided one-half interest of the defendants Arvid C. Carlson and Arthur Carlson in and to the crops raised during the year 1927 * * * subject to the provisions and conditions of the lease or leases between Swanson Bros. and Carlson Brothers."

It is plaintiff's theory that the foregoing decree is without prejudice to defendants because the foreclosure sale would cover only such interest as plaintiff's mortgagors might possess in the crops; and it seems to be intended that future litigation may determine that interest. But the priority between the claims of the respective parties was placed in issue and, further, it is clear from the record that no individual interest has vested or can vest in plaintiff's mortgagors, and that their contingent interest in the crops has been or will be absorbed by the superior rights of the partnership, and the superior rights of the Swansons in the partnership assets. A foreclosure sale, directed as above, would not only be a futile and idle act but promote further confusion and litigation. As there was nothing to sell under plaintiff's mortgage, the provision for foreclosure sale was erroneous.

The judgment and order appealed from are reversed, and the cause remanded for the entry of judgment dismissing plaintiff's complaint.

CAMPBELL, BURCH, and BROWN, JJ., and MISER, C. (sitting for POLLEY, J.), concur in the foregoing by FULLER, C. (sitting for SHERWOOD, P. J.).