(638 P.2d 975)

No. 52,291

THE WELLSVILLE BANK, *Appellee,* v. CHARLES D. NICOLAY, *et al.,*
(DUANE H. ROSEBAUGH), *Appellant.*

Opinion filed January 14, 1982.

*Joe L. Norton* of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, of Olathe, for the appellant.

*R. Michael Latimer* of Skoog & Latimer, of Ottawa, for the appellee.

*Thomas E. Gleason* of Thomas E. Gleason, Chartered, for *amicus curiae,* Peoples National Bank & Trust.

Before JUSTICE McFARLAND, presiding, SPENCER, J., and MARVIN O. BRUMMETT, District Judge Retired, assigned.

SPENCER, J.: The issues presented on this appeal are whether plaintiff held a valid security interest in a partner's interest in a partnership contract for sale of an oil and gas lease, and if so, the priority to be granted such interest. Only defendant Rosebaugh has appealed.

On May 16, 1978, Nicolay and Rosebaugh, partners doing business as Holly Oil Company, entered into a contract for the assignment to Diamond B Industries, Inc., of an oil and gas lease known as the Tarr Lease for the sum of $100,000, to be paid $40,000 down and the balance of $60,000 with interest in equal monthly installments. The contract contained the following provision:

"An Assignment of said Lease shall be executed forthwith and placed in escrow at the Wellsville Bank, Wellsville, Kansas, to be delivered to the said Party of the Second Part on final payment. All monthly payments shall be made at the Wellsville Bank."

Pursuant to their contract, about which no question is raised on appeal, Nicolay and Rosebaugh, d/b/a Holly Oil Company, exe-

cuted an assignment of the lease in favor of Diamond. The original of that assignment, together with the contract for assignment and an affidavit to the effect the Tarr Lease was thereafter to be operated by Diamond, were delivered into escrow with plaintiff. At that time, Nicolay arranged for a checking account to be established with plaintiff in the names of Charles D. Nicolay and Duane H. Rosebaugh. In accord with this arrangement, payments made pursuant to the escrow provisions of the contract were transferred into that account. This was done through February, 1979. The record reveals the proceeds were paid to Nicolay and Rosebaugh in equal proportion.

On June 19, 1978, Nicolay obtained a loan from plaintiff in the amount of $25,000 for which he executed and delivered to plaintiff his promissory note and an instrument entitled "Security Agreement," in which there was designated as collateral certain specified equipment and "Assignment of contract." Nicolay then also executed and delivered to plaintiff an instrument whereby he assigned to plaintiff all of his "rights to make payment and receive all benefits" under the May 16, 1978, partnership contract with Diamond. This instrument describes the Tarr Lease by its date, names of the lessors and lessee, description of the real estate leased, and the recording data of the lease. This instrument, entitled "Assignment," provides that the assignment was made to secure plaintiff against any loss incurred by reason of the loan granted Nicolay.

Nicolay's note to plaintiff was not paid when due and on March 7, 1979, Nicolay executed a renewal note to plaintiff in the amount of $29,382.29. On March 16, 1979, plaintiff learned of an anticipated sale of certain of the equipment in which it claimed a security interest and made demand on Nicolay that all money resulting from that sale be applied to his note.

Four days later, Nicolay and Rosebaugh went to the Peoples National Bank & Trust, Ottawa, Kansas, with an original copy of the Diamond contract, identical to the one placed in escrow with plaintiff. Under date of March 20, 1979, Nicolay and Rosebaugh entered into an agreement with Peoples for the purpose of administering the provisions of the Diamond contract. Nicolay and Rosebaugh then executed a "Security Agreement" in favor of Peoples by which they attempted to convey a security interest in an oil and gas lease executed in 1977, involving the Tarr Lease.

The trial court found this to be an attempt to encumber something that did not exist. Though the record becomes unclear at this point, it appears on May 21, 1979, Peoples was given a security interest in the Diamond contract, which it perfected by means of a financing statement filed on that date. In any event, plaintiff became aware of what had transpired and on April 24, 1979, called for full payment of the Nicolay note. This action followed and after trial the court found: (1) Nicolay had lawfully assigned his rights under the Diamond contract to the Wellsville Bank as security for his note; (2) Nicolay had defrauded the Wellsville Bank in re-assigning his rights in the Diamond contract; (3) the Wellsville Bank's security agreement and Nicolay's assignment of his rights in the Diamond contract effected a perfected security interest in such rights in accordance with K.S.A. 1980 Supp. 84-9-305; and (4) Peoples' rights to Nicolay's interest in the Diamond contract were "inferior" to the rights of plaintiff. Judgment for plaintiff was entered accordingly.

As related, Nicolay and Rosebaugh entered into the Diamond contract on behalf of their partnership, Holly Oil Company. On this basis, Rosebaugh contends Nicolay's assignment to plaintiff of his rights to "receive all benefits" under that contract was void in that it purported to convey an interest in specific partnership property.

K.S.A. 56-324 provides:

"The property rights of a partner are (1) the partner's rights in specific partnership property, (2) his or her interest in the partnership, and (3) his or her right to participate in the management."

K.S.A. 56-325(*b*), pertaining to the nature of a partner's right in specific partnership property, provides in part:

"The incidents of this tenancy are such that:

. . . .

"(2) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property."

K.S.A. 56-326 defines the nature of a partner's interest as his or her share "of the profits and surplus, and the same is *personal property.*" Emphasis added. K.S.A. 56-327(*a*) deals with the assignment of a partner's interest, and provides:

"A conveyance by a partner of his or her interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to

interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; *but it merely entitles the assignee to receive in accordance with his or her contract the profits to which the assigning partner would otherwise be entitled."* Emphasis added.

In *Gaynes v. Wallingford,* 185 Kan. 655, Syl. ¶ 3, 347 P.2d 458 (1959), it was held:

"The corpus of the assets is partnership property, and neither partner separately has anything in that corpus; the interest of each is only his share of what remains after the payment of all partnership debts and all accounts between the partners are settled."

As the language employed in Nicolay's assignment to plaintiff refers to his rights to receive benefits under a partnership contract as opposed to his rights to receive profits and surplus from the partnership, Rosebaugh contends the assignment was an unlawful attempt to assign an interest in specific partnership property, the Diamond contract; and because of K.S.A. 56-325(b)(2), no interest was in fact transferred. We cannot accept Rosebaugh's position as the record before us clearly demonstrates that Nicolay's assignment to plaintiff was not of specific partnership property, but rather the portion of the proceeds from the sale of a partnership asset to which Nicolay as an individual would otherwise have been entitled to receive and retain. The assignment to plaintiff had no effect on the conduct of the partnership business or on the possession, management or disposition of partnership property.

In *In re Decker,* 295 F.Supp. 501 (W.D.Va. 1969), *aff'd* 420 F.2d 378 (4th Cir. 1970), the court was called upon to deal with the question of whether an assignment of a partner's interest in specific partnership property might be valid as an assignment of his partnership interest. The question arose from an attempt by the trustee in bankruptcy to set aside certain deeds of trust executed by Decker. It was there stated:

"The trustee relies on Windom National Bank v. Klein, 191 Minn. 447, 254 N.W.602, 604 (1934), for the proposition that the purpose of section 25 (b) (2) is to prevent an assignment of a partner's interest in specific partnership property, and 'the only way, therefore, to apply it according to its plain purpose is to nullify all attempts at such assignments. The law is that they were void ° ° ° .' However, the court in Windom National Bank v. Klein expressly left open the question here presented. The trustee also quotes an article by William Draper Lewis, a draftsman of the Uniform Partnership Act: 'In other words, a partner may assign partnership property for a partnership purpose, but if he attempts to assign the

property for his own purposes he makes no assignment at all, because the act destroys the quality of assignability for any but a partnership purpose.' Lewis, The Uniform Partnership Act, 24 Yale L.J. 617, 634 (1918).

"This statement of the law is correct as far as it goes, but Dean Lewis qualified the statement with his comments in Commissioners Note, 7 Uniform Laws Anno. 147 (1949):

'Of course, an attempted assignment of all the partnership property, void as an assignment of the rights of either of the partners in the property, or an attempted assignment by one partner of his rights in all the partnership property, may be regarded as a valid assignment of the partner's interest in the partnership.'

"It has been so regarded in the following cases, decided under the Uniform Partnership Act: Shapiro v. United States, 83 F.Supp. 375 (D.C.Minn.) Aff'd 178 F.2d 459 (8th Cir. 1949); Valley Springs Holding Corp. v. Carlson, 56 S.D. 163, 227 N.W. 841 (1929).

"The rationale of the *Shapiro* case is apposite: Where an assignment is not clearly intended to convey a partner's interest in specific partnership property, that is, his right to use partnership property for partnership purposes, but is intended to convey some interest in partnership property, the fact that the parties did not couch their assignment in proper terms does not justify a court's holding their transaction void when there exists evidence establishing a basis upon which the transaction can be consistent and valid. 83 Supp. at 377." 295 F.Supp. at 511.

In the more recent decision of *Stroebel-Polasky Co. v. Slachta,* 106 Mich. App. 538, 308 N.W.2d 273 (1981), the court followed *Decker* and *Shapiro* in holding a partner's mortgage of partnership real estate was proscribed as an assignment of the partner's rights in specific property of the partnership, but that the mortgage was to be construed as effecting a transfer of the interest in the property that the partner could transfer, *i.e.,* his interest in the partnership itself, defined as his share of the profits and surplus.

We conclude as did the trial court that Nicolay's assignment to plaintiff was not an assignment of a partnership asset, but rather an assignment of Nicolay's individual share of the proceeds resulting from the partners' transaction with Diamond. As such, it was of personal property susceptible to assignment. See 68 C.J.S., Partnership § 85 [a]; 60 Am. Jur. 2d, Partnership §§ 104, 106; *Jones v. Way,* 78 Kan. 535, 536, 97 Pac. 437 (1908).

It is argued however that, notwithstanding the validity of Nicolay's assignment to plaintiff, it did not create an enforceable security interest.

K.S.A. 1980 Supp. 84-9-203 provides in part:

"(1) Subject to the provisions of section 84-4-208 on the security interest of a collecting bank and section 84-9-113 on a security interest arising under the article

on sales, *a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless*

"(*a*) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

"(*b*) value has been given; and

"(*c*) the debtor has rights in the collateral." Emphasis added.

There is no real question but that the requirements of (1)(*b*) and (*c*) were satisfied. The determinative question is whether either of the alternative requirements of (1)(*a*) were met.

Rosebaugh directs attention to that instrument delivered by Nicolay to plaintiff entitled "Security Agreement" and notes the relevant portion of the collateral is described as simply "Assignment of contract." Suffice it to say, such a description does not reasonably identify the contract rights sought to be secured. K.S.A. 1980 Supp. 84-9-110. Plaintiff tacitly concedes this point, but contends an enforceable security interest was nevertheless created by virtue of its physical possession of the Nicolay assignment. This raises the question of whether a secured party may take possession of contractual rights, intangibles, by physically holding the document evidencing the assignment of such rights.

In *Walton v. Piqua State Bank*, 204 Kan. 741, 466 P.2d 316 (1970), the court analyzed the issue of whether delivery of a savings account passbook to the pledgee constituted a valid pledge of the savings account fund, an intangible. The court reviewed Annot., 53 A.L.R.2d 1396, 1398:

" 'Problems involved in the free transfer of intangible property interests have been substantially solved, as to a large class of such rights, by the introduction of the concept of negotiability, by virtue of which a document representing the right is vested with many of the characteristics of an actual chattel, and it seems to be settled that such a right may be pledged by delivery of the negotiable instrument which represents it. However, there remains a large class of intangibles which may in some sense be said to be represented by a commercial document which is not, however, negotiable, and the question is frequently presented whether such a right may be pledged by delivery of the document in question. This question may be answered simply, although not too helpfully, by saying that *the courts generally recognize that if the document delivered does represent the right to the extent that it stands in the place of, or embodies, or reifies, the intangible, a pledge of the document amounts to a pledge of the right.*" 204 Kan. at 754-755; emphasis added.

The court delineated such documents as "indispensable instru-

ments," and adopted the definition set forth in Restatement of the Law, Security § 1:

"Comment (e) defines 'indispensable instrument' as meaning the formal written evidence of an interest in intangibles so representing the intangible that the enjoyment, transfer or enforcement of the intangible depends upon the possession of the instrument." 204 Kan. at 756.

Accord, 68 Am. Jur. 2d, Secured Transactions § 74.

The enjoyment and enforcement of contractual rights obtained by means of written assignments do not depend for their existence upon the assignee's possession of the instrument of assignment, it being evidence merely of the underlying agreement. The assignment document does not embody the rights assigned and is therefore not an "indispensable" writing.

For these reasons, plaintiff's possession of the assignment executed by Nicolay did not create a possessory security interest pursuant to K.S.A. 1980 Supp. 84-9-203(1)(a). Nevertheless, a valid security agreement does exist, though not designated as such, in the assignment executed by Nicolay in favor of plaintiff. A "security agreement" is one which creates or provides for a security interest. K.S.A. 1980 Supp. 84-9-105(l). It must reasonably identify the collateral [K.S.A. 1980 Supp. 84-9-110], and be signed by the debtor [K.S.A. 1980 Supp. 84-9-203(1)(a)]. The assignment from Nicolay to plaintiff satisfies these requirements.

It was the judgment of the trial court that the interest of Peoples National Bank & Trust was inferior to that of plaintiff and Peoples did not appeal. Rosebaugh has failed to demonstrate his entitlement to relief. The judgment of the trial court must therefore be affirmed.