## PEOPLE'S FINANCE & THRIFT CO. v. DE BERRY

(No. 1921; Nov. 24, 1936; 62 Pac. (2d) 307)

302

For the appellant, there was a brief and the cause was argued orally by *G. R. McConnell* of Laramie.

304

For the respondent, there was a brief and the cause was argued orally by *E. T. Lazear* of Cheyenne.

BLUME, Justice.

In this case the plaintiff, People's Finance and Thrift Company, sued G. DeBerry and eight others, each separately, to recover on a promissory note transferred to plaintiff, originally given to Leonard Advertising Service, a trade-name used by P. F. Lichtenstein. Defendants pleaded in substance that the Advertising Service failed to carry out its contract; that it fraudulently and falsely represented that the advertising clock, hereinafter mentioned, would be kept in good repair, and that advertising slides would be furnished, none of which was done; that the notes sued on and a

contract were originally attached and were severed fraudulently and without consent, and that Lichtenstein, who transferred the notes to plaintiff, had no authority to do so. The cases all involved the same question and were tried together. Judgment was entered in each of the cases for plaintiff and the defendants have each appealed, submitting, however, one record, and the result in one case will dispose of them all.

The notes in suit were given about September 1, 1931, and aside from the date and the signature of the respective parties read as follows:

"I promise to pay to the Leonard Advertising Service or order One Hundred and Forty Seven Dollars ($147.00) for value received, payable $12.25 on October 22, 1931 and $12.25 monthly thereafter. All payments are immediately due and payable on default of any, including attorney's fee and cost of collecting."

The notes were given by the defendants in return for advertising. The advertising was to be done by means of slides placed in a clock, put by the advertising agency (Lichtenstein) in the Empress Theatre in the City of Laramie, Wyoming, the advertisements being projected from the clock onto the screen in the theatre. At the time of the execution of the notes, they were attached to a contract, a perforated line serving as the division line. The notes were, either at the time of the signing of the note, or subsequently, separated from the respective contracts, and this was done, according to plaintiff's testimony, pursuant to agreement. The contracts read as follows:

"Duplicate Contract No.......................... The Leonard Advertising Service Advertising Contract 557 W. Jackson Blvd. Chicago Ill. The Clock Owner is hereby authorized to place one advertisement on the dial of the Leonard Advertising Clock installed in Empress Theatre, Laramie, Wyo. This contract is for a period of twelve months from the date of the first display of the advertisement. In consideration of the services

rendered hereunder, the Advertiser agrees to pay the Clock Owner the sum of $12.25 per month beginning with date of installation. The Clock Owner agrees to keep the clock mentioned herein operating regularly and in good order during the life of this contract. If, for any reason, the exhibition of the advertisment should be interrupted, the advertising will be extended for such interrupted service, and in no case shall such interruption constitute a breach of this agreement. There are no understandings, agreements, representations, or warranties, expressed or implied, not specified herein. Approved by S. A. Ackerman, Date Sept. 1, 1931."

The clock mentioned in the contracts was duly installed about September 21, 1931, and advertisements of the defendants were duly inserted therein and projected as agreed. Lichtenstein, desiring to dispose of his notes, applied to a bank at Laramie. The bank did not desire to purchase them, but Harry Jones, one of the officials or clerks therein, told Lichtenstein to apply to the plaintiff, who at that time had an office at Cheyenne, Wyoming, and one W. I. Christian, was in charge thereof. Lichtenstein accordingly saw Christian and offered to sell the notes at a discount of 15%, the usual discount, as he testified, in such cases. Christian, after conferring with officers of the plaintiff company at Casper, agreed to buy the notes, provided that would be satisfactory to the various defendants. He, accordingly, prepared a letter as follows:

"People's Finance and Thrift Company
Cheyenne, Wyoming, September 22, 1931.
To whom it may concern: We are considering purchase of your note given to the Leonard Advertising Service in payment of advertising in the Empress Theatre of your city. If you are satisfied to make these payments to us each month as they fall due, kindly signify your consent by signing below."

(signed by Christian)

The letter was given to Lichtenstein, who took it to Laramie, showed it to the defendants, obtained their

signatures, returned the letter, thus signed, to Christian, and the notes were then, and on September 23, 1931, sold to the plaintiff at the price above mentioned, the plaintiff further paying one per cent to Harry Jones. Christian had also, before buying the notes, investigated the financial responsibility of the defendants, and had found that to be good. There is testimony in the record that when Lichtenstein took Christian's letter to the defendants, he told them that plaintiff would merely act as his agent and would see that the contract on his part would be fulfilled.

The defendants, except F. C. Theisen, seem all to have made two payments on the notes, one due in October, 1931, and one due in November, 1931, but none thereafter. However, even before that, commencing, perhaps, in October, 1931, the defendants began to become dissatisfied with their contract. They were to be furnished, it seems, with different slides, containing changes in the advertisements desired from time to time. These were not furnished, whether due to the fault of Lichtenstein, or his fault alone, is not clear, since it seems that the words of the advertisements put upon the slides were to be sent to Chicago, and that was not done. Furthermore, a few weeks after installation, the clock became out of repair. A bulb, it seems, burned out, and no advertisements were, thereafter, projected upon the screens. While Lichtenstein testified that he had made arrangements for the maintenance of the clock, this was denied. A few other facts will be mentioned in the course of this opinion.

1. If plaintiff is a holder of the notes in due course within the meaning of Sec. 74-402, Rev. St. 1931, it is entitled to recover herein. Sec. 74-407, R. S. 1931. It is not questioned that the notes themselves are regular on their face and that plaintiff became the holder before they became due. There were no infirmities in the notes, nor was the title of Lichtenstein defective for

any reason within the meaning of Sec. 74-402, supra, and Sec. 74-405, supra, unless it be that he obtained the instruments by fraud or negotiated them in breach of faith or under circumstances which amounted to fraud. There is very little evidence, if any, on these points. The facts must be gathered, if at all, from the testimony that Lichtenstein promised that he would get some one to look after the clock, so as to keep it running, and furnish new slides, neither of which promises he carried out. There was no default in these respects at the time of the negotiation of the notes herein. Representations to get some one to look after the clock, if not carried out, would, of course, show partial failure of consideration when the clock would cease to work. Whether sufficient evidence has been adduced to show that they constituted fraud in the making of the contract is another matter. And if the testimony adduced on behalf of plaintiff is true that the defendants were told at the beginning that the notes would be negotiated, it is difficult to see that there would be any breach of faith or fraud in doing so. The testimony that Lichtenstein told defendants at the time of obtaining consent of the transfer of the notes that plaintiff would look after keeping the clock going, would, perhaps, have a tendency to show some want of good faith in negotiating the notes, but the conflict in the testimony was for the trial court to solve. Every holder is prima facie a holder in due course. Sec. 74-409, supra. And it is generally held that the burden of proof that he is so is not put upon plaintiff by proof of total or partial failure of consideration or want of consideration. Brannan, Neg. Inst. (5th Ed.) p. 68-81 and the many cases cited. Admitting, however, for the purposes of this case, that the testimony was sufficient to show a defect of title or an infirmity; that the court should have so held, and that the burden then fell on plaintiff to show that he was a

holder in due course, as provided by Sec. 74-409, Rev. St. 1931, that burden, we think, was fully sustained, or, at least, we would not be authorized to reverse the trial court on that point. If there was such infirmity or defect of title, plaintiff must either have had actual knowledge thereof, or knowledge of such facts that his action in taking the instrument amounted to bad faith. Sec. 74-406, supra. It is not contended that it had actual knowledge. But it is claimed that it had knowledge of such facts sufficient to put it upon further inquiry. In fact, the contention is that plaintiff became a conspirator in the furtherance of the scheme conceived and perpetrated by the Leonard Advertising Service. Counsel, when making this statement, must have had before him some record not before us. The record filed in this court does not disclose the contention to be true. Harry C. Jones, apparently connected with some bank at Laramie, sent Lichtenstein to Christian and advised him of that fact. He had, seemingly, sent other people, who desired to discount commercial paper, to plaintiff. Christian, at Cheyenne, communicated with the main office at Casper. He caused the financial standing of the defendants to be investigated. He would not consent to discount the notes till he had obtained the consent of the defendants thereto. He paid eighty-six cents on the dollar, which is shown to be the usual amount paid in such cases. He testified that he had no knowledge of any infirmities or defects in the notes, if there were any. This was ample evidence for the trial court to find that the plaintiff was a purchaser of the notes in good faith for value, and that it was a holder in due course—unless it be on account of what is stated hereafter. In fact it is difficult to see how the court could have found otherwise under the testimony. It is true, of course, as asserted, that the plaintiff could have avoided the injustice perpetrated on defendants by not purchasing the notes.

It is equally true that the defendants themselves could have done so by not signing the notes, nay, even by not consenting to the transfer thereof. If we understand the brief of counsel correctly, the reason advanced for the contention that plaintiff became a co-conspirator against the defendants is the claim that Christian, on behalf of plaintiff, should have made a more thorough investigation of the facts. We are not impressed with that argument. He has failed to point out what further facts he should have discovered, and which, if discovered, would have led him not to purchase the notes. There were but few facts discoverable: that the defendants gave a negotiable note; that this was given in consideration of an executory contract; that part of the contract had been duly fulfilled; that the clock had been duly installed and advertisements were duly made; that there was no breach of the contract at that time; that part of the contract on Lichenstein's behalf was still to be fulfilled in the future. Plaintiff could not by any possibility have discovered that representations were made to defendants which were fraudulent and not made in good faith. The defendants themselves knew of none; neither did they suspect any, as is clearly evidenced by the consent to the transfer of the notes. Plaintiff did not need to discover that it would be possible that Lichtenstein might not carry out his part of the contract. Every one knows that to be true in connection with any executory contract. Defendants knew it and still they consented to the transfer. To uphold counsel's contention would mean that no negotiable note may be given in connection with any executory contract, without being subject to all defenses existing between the original parties, even though negotiated to an innocent purchaser for value. And counsel, indeed, states in his brief that one "who purchases a note with knowledge that the sole consideration was an executory contract

which *might* be breached is not a holder in due course." But the overwhelming weight of authority is to the contrary, as is attested by the many cases cited in Brannan, Neg. Inst. Law (5th Ed.) p. 589; 3 A. L. R. 987, note; 3 R. C. L. 1068. These authorities were partially mentioned in Caldwell v. Roach, 44 Wyo. 319, 336, 12 P. (2d) 376. That case is relied on here. But it presents facts entirely different from those presented here, and is no authority herein. We stated in that case, citing 3 R. C. L. 168, that the presumption of law would be that the executory contract would be carried out in good faith; that we had no fault to find with the rule as applied to the ordinary case; but that where the reason of the rule fails, the rule itself should fail. The reason of the rule does not fail in the case at bar. The contract herein is not conditional; it merely required certain acts to be still performed by Lichtenstein, the importance of which, as compared with the main part of the contract, may well be disputed. We cannot well ignore the rule in a case, when the result of doing so would be the destruction of the rule itself. And that would be true, we think, in this case, if we should uphold counsel's contention.

The only thing, so far as we can see, which was not discovered by plaintiff, but which might have been discovered, was the fact that the notes were originally attached to the contract. And if they had been detached without authority, the question would then have been before us as to what effect that would have had on an innocent purchaser for value, and courts are not agreed on that point. See 2 American Jurisprudence 654; notes 22, L. R. A. N. S. 264; Ann. Cas. 1917 E. 610; Brannan, Neg. Inst. (5th Ed.) 972; 29 Yale L. J. 797-798. But that is not true. Hence the non-discovery of the detachment is immaterial. Defendants indeed pleaded want of authority to detach, but failed to produce evidence sustaining that defense. There was tes-

timony to the contrary on behalf of plaintiff aside from that relating to consent of transfer of the notes, and that consent to such transfer would seem to have disposed of that contention effectually, since consent only of the note was asked, and no mention was made of the contract. When such consent is given, the detachment of the note is no defense. Sec. 74-806, Rev. St. 1931; Note Ann. Cas. 1917 E. 611, and see Ensign v. Leahy, 210 Ill. App. 249, holding that if payments are made on a note with knowledge that it has been detached, the detachment is no defense. In fact this defense is not relied on in this court. Still counsel argues that the contract should be construed in connection with the note, so as to render the latter non-negotiable. The authorities cited are not in point. Obviously, the detachment of the note was intended for the very purpose of avoiding that result. Under the circumstances disclosed in this case, the statement of the court in Conqueror Trust Co. v. Simmon, 62 Okl. 252, 162 Pac. 1098, would seem to be directly applicable. There the court, speaking of a note detached from a contract, stated:

"There being no contract written into or attached to said negotiable promissory notes at the time the plaintiff became the holder of same in due course, and no breach of any contract out of which said notes grew, and hence no possible knowledge of said breach on the part of the said holder in due course, plaintiff herein, before purchase, the general knowledge of the business transaction and contracts of the Southwestern Sales Company on the part of the plaintiff before purchasing said notes, or the specific knowledge of said contract on the part of the plaintiff, were no breach of same, actual or complained of by the defendant, at the time of the said purchase of said notes by the plaintiff, would not render said notes non-negotiable under our law, and could not possibly constitute any defense to the payment of same when due, on the part of the defendant, the maker of said notes. * * *

"It will not do to say that, merely because a purchaser of negotiable promissory notes in due course of business for a valuable consideration had knowledge of a legal transaction, contract, or agreement, out of which said notes came into existence before purchasing the same before maturity, the maker of said notes can defeat the payment of same by showing that the said contract or agreement between him and the original payee thereof has thereafter been breached by said payee."

2. Counsel for the defendants contends that Lichtenstein, by taking the letter of Christian to obtain consent to the transfer of the note, became plaintiff's agent, and that it, accordingly, is bound by all the knowledge which Lichtenstein had. Counsel have not cited any case in point. Lichtenstein wanted to sell the notes. Plaintiff would not buy them except by and with the consent of the defendants. Lichtenstein, therefore, was much more interested in obtaining such consent than was the plaintiff. Whatever he did was to further his own interest. Defendants must have known that. Under such circumstances the knowledge of Lichtenstein cannot be charged to the plaintiff, even though in a certain sense he might be regarded as its agent. It is stated in 2 Am. Jurisprudence 298:

"There is a well-established exception to the general rule that the knowledge of an agent is to be imputed to the principal in situations where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, as where the agent acting nominally as such is in reality acting in his own business or for his own personal interest and adversely to the principal, or for any other reason has a motive or interest in concealing the facts from his principal."

3. The testimony on behalf of plaintiff showed that P. F. Lichtenstein did business under the name of Leonard Advertising Service, a trade name, and was the only person interested therein. Counsel argues that

some one else was interested therein, and hence plaintiff has not obtained a clear title to the notes. The evidence does not sustain this contention. At least, there was ample evidence to sustain the trial court on this point.

It follows that the judgment of the trial court herein must be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.