WILSON BROS. SAND & GRAVEL COMPANY, Appellant (Defendant below),

v.

CHEYENNE NATIONAL BANK, Appellee (Plaintiff below).

No. 3203.

Supreme Court of Wyoming.

Feb. 25, 1964.

Pattno & Norris, Cheyenne, for appellant.

Roncalio, Graves & Smyth, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

This case is an appeal from a summary judgment in favor of the Cheyenne National Bank, the indorsee of a $9800 promissory note given by the Wilson Brothers Sand & Gravel Company to O'Dell Motor Company (Jack O'Dell, owner) for a truck-tractor. The instrument, not titled, was executed December 13, 1961, and assigned to the bank the same day. It was contained on one page and bore only one signature, the first three paragraphs in the upper portion relating to a promissory installment note with the printed portion showing it to be payable at the Cheyenne National Bank. Thereafter followed the words, "To secure the payment of the foregoing indebtedness * * *," and continuing in a common form of chattel mortgage, in the body of which was contained one of the controversial provisions, " * * * whenever the said mortgagee, or its assigns, shall feel insecure or unsafe in the security, said indebtedness shall without notice become due and payable at once in full * * *." On the reverse side the instrument was entitled, "Chattel Mortgage." There was a space for assignment with printed portion reading, " * * *. unto Cheyenne National Bank of Cheyenne * * *." On the bottom portion of the reverse side was printed, "Cheyenne National Bank Cheyenne, Wyoming."

The complaint contained merely the routine allegations, execution and delivery by defendant of the note to O'Dell Motor Company; assignment by O'Dell to the bank; delinquency of defendant; and claimed balance due with interest and attorneys' fees. The answer was a general denial and alleged a failure of consideration; fraud in the inducement and execution of "all instruments"; the transaction was incomplete as a matter of law; the complaint failed to state a claim upon which relief could be granted; the note was not negotiable; and plaintiff took subject to existing defenses. Defendant also counterclaimed for the installments which had been paid on the note. After defendant made demand for a jury

and had answered certain interrogatories, plaintiff filed a motion to strike the defense alleging nonnegotiability, which after a hearing was granted. Thereafter, plaintiff moved for a summary judgment with annexed affidavits, which were resisted by cross-affidavits. These showed generally that the note in question was negotiated by O'Dell to the plaintiff bank on December 13, 1961, at a standard bank discount; that at the time of negotiation the bank did not demand the title to the truck but did verify that the chattel mortgage executed by the defendant was filed of record and did according to the bank's officers rely solely on the credit record of Wilson; that the January and February payments were made on the note; that no question was raised by defendant until March 16, 1962; that at about that time O'Dell had disappeared and an officer of the bank called his bookkeeper to ascertain about the title; that it thereafter developed the truck for which the note in question had been given had, unknown to Wilson, been previously mortgaged; that the referee in bankruptcy had interviewed a bank officer, finding that it had never had the certificate of title to the truck but that when O'Dell had negotiated the loan he had promised he would bring the title in next day but did not do so; that Wayne Wilson, a partner in Wilson Brothers Sand & Gravel Company, had signed the note and mortgage in blank and Leonard E. Brain, the person whose name appears on the affidavit, was not present and did not acknowledge his signature in his presence; that Wilson received possession of the truck from O'Dell, made a number of repairs, at his own expense, was led by O'Dell to believe that plaintiff had the certificate of title to this truck but thereafter found it did not; that according to an official of another Cheyenne bank it is standard bank policy for the area of Cheyenne not to advance money on a loan on a motor vehicle without presentation and proof of an unencumbered title to said vehicle; that during the period of April 1, 1961, and March 3, 1962, the Cheyenne National Bank furnished O'Dell with note and mortgage forms indorsed directly to the bank for his use in financing the motor vehicles which he sold; and that the title to the truck-tractor showed no indorsement by O'Dell of assignment and warranty of title to the vehicle as required by § 31–37, W.S.1957.

Three questions are presented by this appeal:

Is the alleged promissory note a negotiable instrument?

Was there an issue of fact so as to preclude the entry of a summary judgment?

Was plaintiff a holder of the note in due course?

It is contended by the defendant that the instrument in question did not meet the third requisite of a negotiable instrument under § 13–287, W.S.1957, that it "Must be payable on demand or at a fixed or determinable future time" because of the provision in the latter part of the instrument that:

"Until default is made in the payment of the instalments above recited, or breach of any covenant herein, it shall be lawful for the undersigned mortgagor(s) to retain possession of said property and use and enjoy the same; but in case of default in the payment of the instalments aforesaid, or any of the covenants expressed herein, or if said property or any part thereof shall be attached or claimed by any other person or persons, or shall be misued, or whenever the said mortgagee, or its assigns, shall feel insecure or unsafe in the security, said indebtedness shall without notice become due and payable at once in full, and said mortgagee or assigns shall thereupon have the right to take immediate possession thereof and remove the same to such other place as it may be deemed most convenient and for such time as may be deemed best at the risk and expense of the undersigned; and sell and dispose of said property or any part thereof at public or private sale without notice in the county where the property may be located or the City of Cheyenne and County of Laramie, Wyoming, mort-

gagee reserving the right to purchase at the said sale. * * *"

There is admittedly a paucity of authority on this aspect concerning instruments similar to the one at bar, both parties relying upon the holding of Morgan v. Mulcahey, Mo.App., 298 S.W. 242. Although the decision in that case did not set out the instrument in issue, the court in describing it said, 298 S.W. at 244:

"The note and mortgage are upon the same piece of paper, are not separated in any way, and were signed by the defendants but the one time and that at the bottom of the whole paper."

and continued:

"* * * defendants insist that the note is not negotiable in that the payment may be accelerated by the holder at any time he deems his security insufficient, making the instrument due at an uncertain date * * *. If the acceleration clause appeared in the note itself, there is no question but that the point would be well taken. [Citing authorities.] But this clause does not appear in the note, but in the chattel mortgage, and the two portions of the instrument are not to be considered together, the rule being that although the two statements are written upon the same piece of paper, each is to be considered and interpreted as a complete entity. * * *"

Analysis of the case discloses that the determination was a matter of first impression, the court not relying upon any other decision in which the note and mortgage were contained on one page with but a single signature. Over thirty years later the same court had occasion to deal with a note and mortgage identical to the one in the Morgan case and adhered to the former decision. Illinois State Bank of Quincy v. Pedersen, Mo.App., 350 S.W.2d 102. The effect of an "insecure" clause is the subject of peripheral discussion in 11 Am.Jur.2d Bills and Notes § 185; Annotation, 34 A.L.R. 872, 888; Annotation, 72 A.L.R. 268, 273; Annotation, 44 A.L.R.2d 8, 90. Courts are disagreed as to the effect on a note of an acceleration of the mortgage securing it; 11 Am.Jur.2d 295; Annotation, 34 A.L.R. 848; Annotation, 56 A.L.R. 185. Defendant's contention that the document must be taken in its entirety and cannot be separated, one-half a promissory note and the other half a chattel mortgage, does not clarify the situation or solve the problem but rather points out the bad practice of creating a document which is likely to be subject to misunderstanding. In a fair analysis it would seem that the insecurity clause here refers to an acceleration in due date only insofar as the security is concerned. We would therefore be reluctant to say that the provision rendered the instrument nonnegotiable.

The pivotal issue in the case as we view it is the bank's status as a "holder in due course" within the provisions of § 13–337, W.S.1957. It is said in 11 Am.Jur.2d Bills and Notes § 440:

"In some decisions there is a quite noticeable trend of thought that a close business association between the payee and one who purchases an instrument from him implies the knowledge of such facts as to show bad faith or renders him such a participant in the transaction between the payee and the maker as to preclude his being a holder in due course of the instrument. * * *"

To the same effect are Commercial Credit Corporation v. Orange County Machine Works, 34 Cal.2d 766, 214 P.2d 819; Public Nat. Bank & Trust Co. of New York v. Fernandez, Mun.Ct.N.Y., 121 N.Y.S.2d 721; Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 726. A good analysis of the decisions on this point is found in 34 N.C.L.Rev. 496. In the instant situation the only evidence in the interrogatories and affidavits tending to show plaintiff's business association with the payee of the note was that relating to the supplying of the mortgage forms with the bank's title placed thereon and the provision that the payments be made at the bank, which type of evidence has frequently been held not to be sufficient to render the as-

signee a participant. Mayer v. American Finance Corporation, 172 Okl. 453, 45 P.2d 497. This does not, however, obviate the bank's burden of proof under § 13–345, W.S.1957, providing:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. * .* * "

Defendant here alleged fraud in the inducement and execution of the note and the information contained in the affidavits was to the effect that there were other mortgages outstanding against the truck-tractor, that O'Dell did not have clear title when he purported to sell it to defendant Wilson, and that he later disappeared. Additionally, counsel arguing the case stated that O'Dell has since been declared bankrupt. The affidavit indicating that the plaintiff did not follow standard bank policy for the area of Cheyenne in checking title to the motor vehicle was at the least evidence of negligence. Whether or not this was gross negligence need not here be determined since we held in People's Finance & Thrift Co. v. De Berry, 50 Wyo. 301, 62 P.2d 307, that the question of a holder's knowing of possible fraud was a question for the trial court—in this instance, the jury. Accordingly, there was a genuine issue of material fact concerning the respective rights of the parties which precluded the entry of a summary judgment under the provisions of Rule 56 (c), W.R.C.P. The judgment was therefore improper, must be and is hereby reversed, and the cause is remanded to the trial court for further action consistent with the views herein expressed.

Reversed and remanded.

Mr. Justice HARNSBERGER (concurring).

I concur in the result and also with most of Judge PARKER'S opinion. However, I cannot join in what appears as tacit approval of the holdings in Morgan v. Mulcahey, Mo.App., 298 S.W. 242, and in Illinois State Bank of Quincy v. Pedersen, Mo.App., 350 S.W.2d 102, which sanction the separate consideration of two clauses of a single instrument.

The fact that these Missouri decisions are both from the same intermediate appellate court rather than from a state court of final resort leaves them something less than authoritative. More importantly, to divide the provisions of the note violates a cardinal rule of construction. Time and again this court has aligned itself with the predominate majority in saying that an instrument must be interpreted and construed within its four corners. To separate the instrument into two parts violates this principle.