**AMERICAN NATIONAL BANK OF POW-ELL, Wyoming, Appellant (Defendant and Third-Party Plaintiff below),**

v.

**FOODBASKET, a partnership, Appellee (Plaintiff below),**

v.

**Pat McPHERSON (Third-Party Defendant below).**

**No. 4031.**

Supreme Court of Wyoming.

June 2, 1972.

Ross D. Copenhaver, of Copenhaver & Castberg, Powell, for appellant.

Joseph E. Darrah, Powell, for appellee.

ON PETITION FOR REHEARING

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The previous opinion, reported at 493 P. 2d 403, is hereby withdrawn, rehearing in the above-entitled appeal having been granted.

The appeal was from a summary judgment in favor of plaintiff Foodbasket. The circumstances reflected by the record were that Pat McPherson was employed by Foodbasket as a bookkeeper from 1965 to 1967 and again from January 5, 1968, until September 5, 1970. Her duties were those of an "office girl," checking invoices, making deposits, collecting insufficient fund checks, etc. She worked approximately twenty-four hours a week and was paid $2.25 an hour. On September 1 or 2 she gave notice to Foodbasket that she was quitting her employment at the end of that week. Normally, receipts for Friday, Saturday, and Sunday of each week were deposited the following Monday and Tuesday. The deposit slip for Friday, August 28, 1970, prepared by Pat McPherson, and deposited at the First National Bank of Powell Friday, September 4, 1970, included a check in the amount of $2,900 dated September 1, payable to Foodbasket, drawn by Pat McPherson on American National Bank of Powell. A deposit slip for the receipts of Saturday, August 29, 1970, was also prepared by Pat McPherson and

deposited at the First National Friday, September 4. This deposit included a check in the amount of $5,500, dated August 31, 1970, payable to Foodbasket, drawn by Pat McPherson on American National. Foodbasket's endorsement of both checks was made by Pat McPherson, which procedure was authorized as a general practice. The checks "evidently replaced cash,"[1] and the drawer at no time involved herein had sufficient money in her account to pay the checks. Obviously, she was aware of this fact and at approximately 1 p. m. on September 4, 1970, contacted the vice-president and cashier of American National, advising him that she had written the checks and that they would be coming to the bank, requesting a loan to cover them. She was informed that American National could not make the loan. The two checks were delivered by First National to American National on September 8, and they were not returned by that bank until September 11. The amounts of the checks were charged back by First National to Foodbasket, which later brought the present action against American National to recover the $8,400, liability being claimed against the defendant bank under the provisions of § 34-4-302, W.S.1957 (1971 Cum.Supp.), defendant answering, inter alia, that plaintiff had no reason to expect or right to require the said checks be accepted or paid, or that acceptance of such checks by the plaintiff and the signature and endorsement of the plaintiff upon the checks were unauthorized and wholly inoperative. Summary jugment issued for Foodbasket in the amount of $8,400.

American National in its appeal points out that under § 34-4-302, if it did not give notice until after the midnight deadline, it is accountable for the amounts of the checks *only* in the absence of a valid defense. Defendant claims that notice of dishonor was given to Pat McPherson orally on September 4 and that since she was the employee and agent of Foodbasket notice to her was sufficient. It also points out that § 34-3-511, W.S.1957 (1971 Cum. Supp.), provides, inter alia, notice may be entirely excused when a party has no reason to expect an instrument will be honored, urging that the record shows Pat McPherson, as Foodbasket's agent, had no reason to expect the checks to be honored— or at least, as to this aspect, there was a question of material fact.

Foodbasket denies there was any question of material fact, and we think correctly so. At most the record reflects that Pat McPherson hoped she could somehow obtain funds to cover the checks, but nothing was presented as a basis for her having *reason* to expect that the checks would be paid. Foodbasket insists that according to court interpretation of § 34-4-302,[2] the elements of statutory absolute liability have been met inasmuch as the checks in question were forwarded to the payor bank on September 8 and were not returned until September 11. In so doing, it maintains that the general law of principal-agent is contrary to American National's view since the concept of agent's knowledge imputed to his principal is not in effect where the agent is acting in his own interest and is engaging in such conduct as would give rise to a presumption that he would not communicate the same to his principal, citing People's Finance & Thrift Co. v. De Berry, 50 Wyo. 301, 62 P.2d 307, and Commercial Bank & Trust Co. v. Hauf, 32 Wyo. 127, 230 P. 539.

We are unimpressed with this position taken by plaintiff. Foodbasket does not question that Pat McPherson was its agent nor that she had authority in the endorsement and depositing of the checks here in

---

1. According to one of plaintiff's co-owners he would not have expected checks in this amount to be paid and would have verified before cashing them.

2. Rock Island Auction Sales, Inc. v. Empire Packing Co., 32 Ill.2d 269, 204 N.E.

2d 721, 18 A.L.R.3d 1368; Farmers Cooperative Livestock Market, Inc. v. Second National Bank of London, Ky., 427 S.W.2d 247; National City Bank of Rome v. Motor Contract Company of Rome, 119 Ga.App. 208, 166 S.E.2d 742.

issue and fails to come to grips with the "exception to the exception" of which 3 Am.Jur.2d Agency § 284 states:

"A qualification of the rule that the knowledge of an agent engaged in an independent fraudulent act on his own account is not the knowledge of the principal has been made where the agent, although engaged in perpetrating such an act on his own account, is the sole representative of the principal. In such case, if the principal asserts or stands on the transaction, either affirmatively or defensively, or seeks to retain the benefits of the transaction, he is charged with the agent's knowledge. In such circumstances, the agent is said to be the alter ego of his principal, since he is merely the agency through whom the principal himself acted; and this 'sole actor' or 'alter ego' principle has been characterized as an exception to an exception—that is, it is an exception to the 'independent fraudulent act' exception to the general rule that the agent's knowledge will be imputed to the principal—and it brings the governing principle back, full circle, to the imputation of knowledge to the principal."

As the court in Great American Indemnity Co. v. First Nat. Bank of Holdenville, Okl., 10 Cir., 100 F.2d 763, 765, pointed out:

"* * * the principal is impaled on the horns of a dilemma. If he disclaims the agent's act as unauthorized, he has no grounds to retain the fruits thereof; on the other hand, if he retains the fruits of the agent's act, after knowledge of the facts, he must in fairness be charged with the agent's knowledge. * * *"

Thus, while we agree that, under the various authorities heretofore cited (footnote 2), absent a valid defense American National would have been accountable for its failure to meet the midnight deadline, Foodbasket cannot on the one hand seek recompense from American National for the value of the checks and yet assert that it had reason to believe they would be paid. Accordingly, the summary judgment of the trial court issued for Foodbasket must be reversed.

Reversed.