**ILLINOIS STATE BANK OF QUINCY,**
Respondent,

v.

**John PEDERSEN and Vella Pedersen,**
Appellants.

No. 23013.

Kansas City Court of Appeals.
Missouri.

Oct. 2, 1961.

L. E. Atherton and M. E. Montgomery, Milan, for appellants.

William Y. Frick, Unionville, R. M. Gifford, Green City, for respondent.

————◇————

CROSS, Judge.

In this action plaintiff, Illinois State Bank of Quincy, sues defendants, John Pedersen and Vella Pedersen, on their promissory note executed to Norris Implement Company of Unionville, Missouri. The note represents a purchase price balance allegedly due that company resulting from the sale of two trucks to defendants. Plaintiff bank sues as purchaser and transferee of the note.

There have been three trials of the case, but no former appeals. The third and last, trial resulted in a jury verdict and judgment in favor of plaintiff, against both defendants, in the amount of $5,105.37, from which defendants appeal. There have been two hearings on the appeal, the first of which was set aside by this court's order, granting a rehearing. The submission before us is on the rehearing.

An unfortunate circumstance has plagued the parties, the trial court and this court. The court reporter died before her notes taken at the trial appealed from were transcribed. Numerous delays occurred while counsel endeavored to agree upon the transcript. It appears before us in primarily narrative and sketchy form, essentially reconstructed from the notes of counsel. The parties are not in agreement on several points. In those instances the trial judge has incorporated rulings based on his individual memory and trial notes.

Defendants do not deny either that they executed the note sued on or that they defaulted after making only two of twenty-four monthly payments provided for by the instrument. They insist that if the transaction is a conditional sale, plaintiff is not entitled to bring an action on the note for any claimed deficiency after their default and plaintiff's repossession of the chattels. Alternatively, defendants say that if the transaction is not a conditional sale, but a sale involving a note and chattel mortgage, the note is nonnegotiable and without consideration, and that no action lies upon it. They admit in answer that they do not know which of the alternatives is true. We proceed to set out such additional facts as are pertinent to the issues presented.

Defendants' purchase of the trucks was initiated on June 20, 1956, by John Pedersen's signature of a form entitled "Order for International Motor Truck" addressed to Norris Implement Company, ordering two new International Trucks at a total

price of $14,549.07, credited with a trade-in allowance of $3,749.07, leaving an unpaid cash balance of $10,800. The order provides that such balance was "To be evidenced by installment conditional sale note or contract payable in 24 equal monthly installments—beginning August 15, 1956". The order also contains the following provision: "At the request of seller, purchaser agrees to execute a chattel mortgage covering the property ordered hereunder to secure payment of said note or contract".

On June 23, 1956, defendants executed a single page instrument, designated "Missouri—Installment Note and Chattel Mortgage", containing pertinent provisions as follows:

"For value received, I promise to pay to Norris Imp. Co., or order, at Unionville, Mo., the sum of $12,207.84 * * * in twenty-four installments of $508.66 * * * commencing August 15, 1956. * * *

"If default be made in the payment of this note or any installment or part thereof, the payee, owner or holder thereof may declare this note and all installments thereof immediately due and payable. * * *

"In consideration of said sale and to secure the payment of the above described indebtedness, I do hereby grant, bargain, sell, mortgage and convey to Norris Imp. Co., payee and mortgagee herein * * * the property above described * * *

"This mortgage is a first lien upon all the property above described without no exception (sic) * * *

"Provided, However, * * * if default be made in the payment of said indebtedness, or any installment or part thereof, * * * or if at any time the owner or holder of said mortgage shall deem himself or itself insecure, then he or it, is hereby authorized to declare the whole debt due, and to enter upon the premises whereon said property, or any part thereof, may be, and take possession of and remove the same to any place it may deem best and sell the same at public sale * * * after giving not less than ten days' notice * * *, or at private sale with or without the notice aforesaid * * * and out of the proceeds, is hereby authorized to retain such amount as shall be sufficient to satisfy the said indebtedness * * * returning * * * any surplus, and at any such sale the owner or holder of said mortgage may become the purchaser of said property * * * It is further agreed that I am to remain in peaceable possession of said property until default in the conditions of this mortgage. * * *

"(Signed) John Pedersen

"(Signed) Vella Pedersen."

Norris promptly endorsed the "note and chattel mortgage" without recourse and transmitted it to plaintiff. The instrument was received by plaintiff on June 26, 1956. Plaintiff immediately paid the purchase price of the note and mortgage by its check issued and delivered to Norris in the sum of $10,800, dated June 26, 1956.

The account became delinquent soon after its inception. Defendants made only two payments, amounting to $1,017.32. Thereafter they were and remained in default. As authorized by the note-mortgage instrument, plaintiff attempted to locate and take possession of the trucks. The vehicles were finally found—one in Biddeford, Maine, the other in Norwalk, Ohio. Plaintiff had both trucks delivered to Quincy, Illinois, where they were parked on a lot for about two weeks, and then taken to Norris in Unionville.

Plaintiff introduced evidence relative to the condition of the trucks when first seen upon delivery to Quincy and to Unionville. One witness testified, "The rubber on the trucks was in bad condition and had virtually no tread, the body was scratched and

dented. The entire condition of the trucks was rough". Another witness stated: "The tractors were rough, body dented and practically no tires, the tires were practically worthless".

It is uncontroverted that plaintiff has never sold these trucks, either at a public or private sale. They have remained either in plaintiff's possession, or, at its direction, in the dealer's possession.

Plaintiff tried the case on the theory pleaded in the petition—that defendants were entitled to a credit against the unpaid balance of the note amounting to the value of the trucks at the time of repossession. Two witnesses for plaintiff testified as to the value of the trucks. One witness stated they "were worth not more than $3,000.00 each at the time I saw them". The other witness said, "I would place the value of each of these trucks at $3,000.00".

Defendants, although present at the trial, did not testify and produced no witnesses. They offered and read to the jury part of a deposition given by the bank's president admitting that the bank had received a copy of the order prior to purchasing the note. Defendants also introduced in evidence portions of a prior and abandoned petition. The court refused defendants' offer to introduce in evidence a stipulation to the effect that the records of the Director of Revenue do not show that Norris reported the sale of the trucks.

The trial court instructed the jury to return a verdict on the note in favor of plaintiff in the amount of $11,190.52 (the principal balance) from which should be subtracted the amount they found from the evidence represented the fair and reasonable market value of the trucks when taken into plaintiff's possession. The instruction further required the jury to include interest and a reasonable attorney's fee in their verdict.

The jury returned its verdict in response to the instruction. They found that the reasonable value of the trucks was $7,000, and awarded plaintiff the remaining principal balance of $4,190, together with interest in the sum of $414.85, and an attorney's fee of $500. The entire verdict is in the total sum of $5,105.37.

■ Defendants' first point is that "Defendants' objection to the introduction of any evidence should have been sustained". The objection concerned was made at the beginning of the trial for the stated reason "that no cause of action exists in favor of plaintiff and that defendants' answer stands confessed". This objection was overruled by the trial court. Defendants argue: the answer contains an allegation that the transaction is a conditional sale, and other allegations of certain factual matter tending (defendants claim) to establish that there was a conditional sale; plaintiff made no denial of those allegations in reply, therefore, by force of the pleadings, plaintiff admitted to a conditional sale; and, since plaintiffs also admitted taking possession of the truck, they had no cause of action. We find no merit in this contention. Having examined plaintiff's original reply, from the four corners and without "dismemberment" (as condemned in Stock v. Schloman, Mo.App., 226 Mo.App. 234, 42 S.W.2d 61, 64), we are of the opinion that the pleading contains effective denials of the allegations in question. As stated in the Stock case, "Defendants cannot 'split up his adversary's pleadings and use dismembered parts thereof as an admission against him, and discard such parts as affect injuriously' the defendants. (citing cases)." Plaintiff again denied the allegations in question at the conclusion of its evidence by amending its reply with leave of court. As amended, the reply denied all allegations of the answer not specifically admitted. It is our opinion that plaintiff should not be charged with the admissions defendants claim it has made. We further rule that the trial court committed no error by permitting the amendment and denying defendants a continuance applied for on the ground of surprise. We believe those rulings were properly within that court's

province in the exercise of its reasonable discretion. We share the trial court's opinion that no undue hardship or prejudice fell upon defendant as a result of that court's action.

▮▮ . Defendants urge that they were entitled to a directed verdict, first because the transaction was a conditional sale and under the law plaintiff could not sue for an unpaid balance after taking the trucks into possession. From the nature of the documents before us and considering the facts in the case, we are convinced that the transaction between defendants and Norris was not a conditional sale—notwithstanding . the order form (1) states that title shall remain in the seller until the purchase price is paid and (2) provides that the time balance is "to be evidenced by installment conditional sale note or contract". The order form is, as explained by plaintiff's vice-president, a catch-all form used by International Harvester Company both in states where chattel mortgages are the usual security instruments and in states where conditional sales contracts are used. It is significant that the form is flexible enough to provide alternatively for the execution of a chattel mortgage to secure the indebtedness. In any event the order is only a preliminary instrument in the nature of a proposal. We look to the note-mortgage document as the one of real significance in determining the actual nature of the transaction, because it expresses the final agreements and undertakings of the parties. We interpret that document under settled legal principles. The law does not favor conditional sales. In cases where it is doubtful whether a mortgage or conditional sale was intended, the doubt will be resolved in favor of the theory of a mortgage. Even in cases where the original contract clearly created a conditional sale, it has been generally held that the giving of a note and mortgage by the purchaser make the sale absolute. The giving of a chattel mortgage implies that title is in the mortgagor. See International Harvester Co. v. Threlkeld, 226 Mo.App. 600, 44 S.W.2d 182;

State v. Griffin, Mo.Sup., 228 S.W. 800; Little v. Widener, 226 Mo.App. 525, 32 S. W.2d 116. With respect to the note-mortgage instrument, we conclude that in its first portion it is a promissory note, and that in its latter portion it is a chattel mortgage securing the note. It necessarily follows that we find no merit in the proposition urged.

▮ Defendants next assign that the trial court should have directed a verdict in their favor "if this was a note and chattel mortgage" because "The instrument sued on is not a negotiable instrument". It is conceded by defendants that the note standing alone would have been negotiable. It is urged that the chattel mortgage contains a recital that destroys the negotiability of the note by rendering the time of its payment uncertain and dependent on the option or whim of the owner. We requote the provision:

"Provided, However, * * * if at any time the owner or holder of said mortgage shall deem himself or itself insecure, then he or it, is hereby authorized to declare the whole debt due, and to enter upon the premises whereon said property, or any part thereof, may be, and take possession of and remove the same to any place it may deem best and sell the same at public sale * * * after giving not less than ten days' notice * * *, or at private sale with or without the notice aforesaid * * *"

Defendants rely on a general principle stated in Missouri cases to the effect that notes and chattel mortgages currently executed must be considered together. Those decisions are not persuasive on the question before us. In Owings v. Mackenzie, 133 Mo. 323, 33 S.W. 802, 805, the Supreme Court, speaking of a note and mortgage, said:

"We do not controvert the proposition that 'when instruments are executed at the same time, for the same

purpose, and in the course of the same transaction, they are to be considered as one instrument, and are to be read and construed together as such; but we think the doctrine cannot be said to apply to instruments of the kind and character now under consideration, so that the conditional provisions of one shall diminish control, and destroy the absolute provisions of the other. If, in the case at hand, that rule is to apply, then the positive, certain, and unmistakable time fixed for the maturity of the note in suit (and that, too, an essential prerequisite to give the instrument the designation and virtue of a note) is to be destroyed by this collateral instrument, going merely as an incident to the note' ".

The instant issue has been decisively ruled by Morgan v. Mulcahey, Mo.App., 298 S. W. 242, 244, cited and relied upon by defendants—also by plaintiff. There, as in this case, the defendants were contending that a note was not negotiable for the reason that a clause contained in the mortgage securing it permitted the holder to accelerate payment of the note at any time he deemed his security insufficient, thereby making the instrument due at an uncertain date.

The note and mortgage in the Morgan case were in the form of a single, unseparated instrument, written upon the same piece of paper, signed only one time and at the bottom of the whole document. The instrument was almost identical to the note-mortgage in this case. The first portion of it contained the language of a note in conventional form, providing for payment of a named amount, in monthly installments, with specified interest. Immediately following the note appeared the recital of a mortgage in favor of payee, containing the following clause: "If default be made in the payment of the debt above mentioned, or any part thereof, or if at any time the said mortgagee, or holder hereof, deems debt insecure, * * * said

mortgagee may without demand or performance take into possession and sell such chattels at public or private sale, * * *". Of that instrument this court said:

"We think there is no question but that the first part of the instrument is a promissory note and the rest of it a chattel mortgage securing the same. However, defendants insist that the note is not negotiable in that the payment may be accelerated by the holder at any time he deems his security insufficient, making the instrument due at an uncertain date, citing sections 788–791 R.S.1919. If the acceleration clause appeared in the note itself, there is no question but that the point would be well taken. Holliday State Bank v. Hoffman, 85 Kan. 71, 116 P. 239, 35 L.R.A. (N.S.) 390, Ann.Cas.1912D 1; Oklahoma State Bank v. First National Bank of Grandfield, 108 Okl. 272, 236 P. 581. But this clause does not appear in the note, but in the chattel mortgage, and the two portions of the instrument are not to be considered together, the rule being that although the two statements are written upon the same piece of paper, each is to be considered and interpreted as a complete entity. The part constituting a promissory note is governed by the law merchant and the other by the laws of property. Conditions in the mortgage for the benefit of the owner of the paper may be availed of only in his capacity as mortgagee and cannot be read into the promissory note and so render it uncertain or convert a negotiable into a nonnegotiable instrument. Kennedy v. Broderick [7 Cir.] (C.C. A.) 216 F. 137, 138, 139, L.R.A.1915B, 472, and cases cited; City National Bank v. [Goodloe-McClelland] Commission Co., 93 Mo.App. 123, 136. Under the provisions of the instrument now in question, even had the holder of the note and mortgage foreclosed the mortgage under the acceleration

clause before maturity of the note, no suit could have been brought upon the note until its maturity."

The foregoing remains the law of Missouri and is persuasive upon us in our treatment of the issue at hand. We are constrained to the view that the single page document in this case also contains two separate, unitary legal instruments—(1) a note, and (2) a mortgage. As to the effect of the acceleration clause, we are bound to consider each of the two portions of the combined instrument separately and as an individual complete entity. We cannot consider them together or with mutual effect. The acute significance of the Morgan case, as applied to the present case, is as follows: (1) the note and mortgage are considered separate instruments, although written on one sheet of paper with a common signature, (2) the note and mortgage are not to be considered together but each is to be interpreted as a complete entity, (3) the note portion is governed by the law merchant—the mortgage part by the laws of property, (4) privileges in the mortgage inure to the holder *only as a mortgagee* and cannot be read into the note so as to render it nonnegotiable, (5) the acceleration clause authorizes only the taking and selling of the property—not the institution of a suit on the note before its date of maturity.

Defendants argue a distinguishing difference between the Morgan case and this case. They say that in the former the acceleration clause merely authorized the holder *to take possession of the chattels and sell,* but that in the present case the holder is permitted, additionally, to declare the whole debt due *and bring suit on the note prior to its stated due date.* The difference claimed by defendants does not exist. The purport and effect of both acceleration clauses is essentially the same. Plaintiffs have no greater right in this case, in exercising the insecurity provision, than did the holder in the Morgan case. The right "to declare the whole debt due" (in this case) is not the right to bring a suit

on the note prior to the due date stated in the note. The sense of those words is only to the effect that "the whole debt is due" *for the purpose of taking the mortgaged property and applying the proceeds of its sale to the debt.* In Owings v. Mackenzie, 133 Mo. 323, 33 S.W. 802, 805, the Supreme Court has defined the legal import of the words "the whole (debt) shall become due and payable", as contained in a deed of trust securing a promissory note. The court said:

"We are aware that our court has frequently made use of the expression found in the deed of trust before them for consideration, and has declared 'that the notes secured by them have matured by reason of the happening of the condition specified therein,' before the notes upon their face were in fact matured; but by an examination of all cases where these expressions have been found, except in the ones just cited, the term is applied only in a limited sense, and not in the sense that the note or notes have matured for all or general purposes. 'Maturity,' in the sense in which these terms are used, is that they are ripe for the purpose of receiving the application of the proceeds from the sale of the collateral security; by reason of the provision of the deed of trust itself, as well as from the necessity of the situation, that requires of a trustee the disposition of the trust in his hand in such a manner that its fruit is not permitted to waste or perish in his possession".

We rule that the insecurity clause in this case has no accelerating effect upon the due date of the note, does not render the time of payment uncertain, and does not make the note nonnegotiable. We need not and do not here consider what effect the acceleration clause would have had upon the note's negotiability if it had been contained within the body of that instrument.

■■ Further contending that a verdict should have been directed in their favor

"if this was a note and mortgage", defendants claim (1) that the note was given without consideration for the reason that no bills of sale were delivered to defendants, as required by Section 301.280 V.A.M.S., and (2) plaintiff purchased the note in bad faith, with knowledge that it was without consideration. The two propositions will be considered in inverse order. In determining whether plaintiff had knowledge of the claimed infirmity, it will be assumed that there was a failure on the part of Norris to deliver the bills of sale. Under that assumption, we examine the record for evidence tending to prove that plaintiff knew, when it purchased the note, that the dealer had failed in its statutory duty. We find no fact or circumstance of evidentiary value other than the two documents introduced in evidence—the sales order and the note-mortgage—and the testimony of the plaintiff's president admitting that the bank had received the order prior to purchasing the note. There is nothing contained in either the order or the note-mortgage that can be considered as any notice to plaintiff that no bills of sale would be or had been issued to plaintiff. The order in the hands of plaintiff before its purchase of the note-mortgage contained two alternative methods of effecting the sale. It permitted, at the dealer's option, either a conditional sale or an absolute sale with mortgage security. Plaintiff could assume from the order that if the transaction developed into a conditional sale, title to the trucks would remain in Norris, as a legal consequence. Otherwise, plaintiff could reasonably infer that if the transaction turned out to be a regular note-mortgage, credit-installment sale, with a delivery of the trucks into defendants' possession, Norris would deliver the bills of sale in accordance with the statute. Likewise, the note-mortgage instrument itself gave plaintiff cause to believe the dealer had sold and delivered the trucks regularly, and with lawful issuance of title documents, because, as we have said, the giving of a mortgage implies that title is in the mortgagor. This implication is strengthened by the clause in the mortgage reading as follows: "This mortgage is a first lien on all the property above described". The note-mortgage was in usual, ordinary, regular form. It contained no recital that could be considered as any notice that Norris had failed to give defendants bills of sale. We believe there is no substantial evidence that plaintiff was other than an innocent purchaser of the note, in due course, in good faith and without notice of the alleged infirmity. Therefore, even if Norris failed to comply with the law, the note was valid in the hands of plaintiff, although it would be without consideration and unenforcible in the hands of Norris. Morgan v. Mulcahey, supra. It has become unnecessary that we consider the state of the evidence as to whether the title papers were delivered. It is immaterial whether Norris was in compliance with the statute since we regard plaintiff as an innocent holder of a negotiable instrument. We rule that no prejudicial error was committed by the trial court in rejecting defendants' offer to put in evidence a stipulation reciting that the records of the Director of Revenue did not show that the sale of the trucks had been reported, as required by Section 301.280 V.A.M.S. We regard the proffered evidence as immaterial. It is our conclusion that the trial court committed no error by denying defendants' motions for a directed verdict.

Defendants insist that if they were not entitled to a directed verdict the trial court should have submitted to the jury their defenses (1) that the entire transaction is a conditional sale, (2) that the note is non-negotiable, and (3) that plaintiff is not an innocent holder of the note. We have discussed each of these matters at sufficient length. It is our considered opinion that none of the asserted defenses is sufficiently supported by evidence to warrant its submission to the jury.

■ Defendants charge the court with error in permitting plaintiff's witnesses to testify to the condition and value of the

trucks in Quincy and Unionville, without a showing that they were in the same condition as when located in Maine and Ohio. The contention is not supported by citation or authority. We believe the testimony was material and that it was properly admitted. Its weight and effect were for the jury to consider and evaluate. "Evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted * * *." 32 C.J.S. Evidence § 1031, p. 1070. Plaintiff produced evidence of the trucks' condition and value at the time and place those vehicles came into its physical possession. The jury could believe that testimony to be the best evidence plaintiff was able to produce under the circumstances existing. It was sufficient to support the issue of the trucks' value—particularly in view of defendants' failure to testify or produce testimony on the issue.

█ One final point remains before us— raised by defendants for the first time in this court, after the first appeal submission and on this rehearing. Defendants contend that plaintiff waived its right to collect the deficiency of the debt by failing to sell the trucks under the terms of the mortgage.[1] This defense was not presented in the trial court. Defendants there joined with plaintiff in its trial theory that defendants were to be credited with the reasonable value of the trucks—by admitting in their answer "that the said trucks were * * * not only worth $6,000.00" (as alleged in plaintiff's petition) and by further alleging "that said trucks were at that time of the reasonable market value of $13,000.00." Again,

defendants joined with plaintiff in submitting the case on plaintiff's trial theory when they requested and the court gave Instruction No. E, which reads:

"You are instructed that in regard to the evidence before you, of experts and others, concerning the value of the motor vehicles described in evidence after plaintiff took possession of the same. You are not bound by the testimony of such witnesses, but may apply your own judgment and knowledge as to such value, in arriving at your verdict in connection with the testimony offered in the case at trial."

There is no mention of this recently raised point in defendants' motion for new trial. It is not contained in defendants' original brief or in their reply brief. Courts do not look with favor upon a change of trial theory after the case is appealed. Adhering to time-honored rules of orderly procedure, buttressed by almost innumerable decisions, we decline to consider the question raised at this stage of a regrettably protracted cause.

Plaintiff suggests that defendants are in violation of the Rules of Civil Procedure in that certain points contained in their brief are abstract statements of law and fact and fail to show the precise error complained of, and because other points and supporting argument contain no citation of authority. Although plaintiff's insistence is correct in fact, in the exercise of our discretion we have chosen to determine the matters complained of on their merits.

The judgment is affirmed.

All concur.

1. See: General Motors Acceptance Corp. v. Holland, Mo.App., 30 S.W.2d 1087; Miller v. Biggs, et al., Mo.App., 183 S.W. 713; Southern Missouri Trust Co. v. Crow, Mo.App., 272 S.W. 1040; Simpson v. Bantley Realty Co., 142 Mo.App. 490, 126 S.W. 999; Jacques v. Goggin, et al., 362 Mo. 1005, 245 S.W.2d 904.