### In re HOLIDAY INTERVAL, INC., Debtor.

### Bankruptcy No. 87–00668–C.

United States Bankruptcy Court, W.D. Missouri, C.D.

Dec. 21, 1988.

D. James Mariea, Fulton, Mo., for Holiday Shores Property Owners Ass'n.

John Sutherland, St. Louis, Mo., for Mercantile Bank.

James E. Hawk, Jr., St. Louis, Mo., for Colonial Bank.

Christy Barton, Jefferson City, Mo., for trustee.

Jack E. Brown, Columbia, Mo., trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

### FACTS

Mercantile Bank, National Association (Mercantile), has made a motion for relief from the stay on certain writings pledged by Holiday Intervals, Inc., the Debtor, as collateral for a loan. The threshold issue addressed in this opinion is whether such writings are instruments, and thus perfected by possession, or whether such writings are contract rights, properly perfected by filing. Mercantile has had possession of the writings at all times relevant herein, however, Mercantile acknowledges that it has made no filing with the Secretary of State. Holiday Shores Property Owners Association (HSPOA) has intervened on the debtor's behalf.

Mercantile holds two types of writings. One type is a two page document, labeled at the top of the first page "contract", which appears to be an installment sale contract through the first page and top half of the second page, but at the bottom of the second page is a portion designated "promissory note" which purports to state an unconditional promise to pay. The second type of writing is an installment sale contract of two pages without the "promissory note" language at the end.

### ANALYSIS

A. Does the Uniform Commercial Code (UCC) Apply?

The scope of Article Nine is defined in Mo.Rev.Stat. § 400.9–102 as "any transaction ... which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights". Although the purchaser is to receive an interest in real estate, the writing itself is personal property. Comment 4 following 9–102 illustrates the distinction between an interest in real estate and a writing pertaining to that interest which is given as security. The illustration notes that the creation and original perfection of a note and mortgage are outside of the scope of Article Nine and are recorded at the Recorder of Deeds. However, when the mortgagee pledges his note and mortgage to secure another obligation, Article Nine is applicable to the security interest created in the pledged transaction. In accord, White and Summers, *Uniform Commercial Code* (Third Edition) 269–70 (1988); *Matter of*

*Equitable Development Corp.,* 617 F.2d 1152 (5th Cir.1980); Nelson and Whitman, *Real Estate Finance Law* (2d Ed. 133–36 (1985).

## B. Perfection

Under Mo.Rev.Stat. § 400.9–304 (1965)[1], a secured party may perfect a security interest by taking possession of the collateral if such collateral is an "instrument" as defined in Mo.Rev.Stat. § 400.9–105(1)(g). Mo.Rev.Stat. § 400.9–305 provides that a security interest in goods, instruments, negotiable documents, or chattel paper may be perfected by the secured party taking possession of the collateral. Perfection of a "contract right" on the other hand is properly perfected by filing.

Mercantile characterizes the writings as "instruments".

## C. Instrument

Section 400.9–105(1)(g) defines "instrument" as (1) a negotiable instrument (defined in § 400.3–104) or (2) a security (defined in § 400.8–102 or (3) any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment. (§ 400.9–105(1)(g)).

### (1. *Negotiable Instrument*

■ The requirements an instrument must meet to be held a negotiable instrument are set out in Mo.Rev.Stat. § 400.3–104(1). Such instruments must:

1. Be signed by the makers;

2. Be payable at a definite time;

3. Be payable to order; and

4. Contain an unconditional promise from the maker to pay a sum certain in money, and no other promise by the maker except as authorized by the Uniform Commercial Code (UCC).

It is not disputed that each writing is clearly signed by the purchasers of the interval estate, or that such purchasers are the makers of the notes since they have covenanted therein to pay a specific sum in exchange for their interval estate. Each document reflects the specific price paid, which price is a sum certain in money, and states clearly that such price shall be paid to the Seller at particular and definite times as delineated in each writing.

The question arises when considering whether the writings at issue are subject to conditions not authorized by the UCC. The terms and omissions not affecting negotiability are set forth in Mo.Rev.Stat. § 400.2–112, and the material which may be contained in a negotiable instrument that will not make it unconditional is set out in Mo.Rev.Stat. § 400.3–105. Mercantile asserts that there are no conditions set out in the writings under which a purchaser may claim relief at law from payment of the amount owed under the writings. The bank relies on Mo.Rev.Stat. § 400.3–105 which expressly states that "a promise or order otherwise unconditional is not made conditional by the fact that the instrument (a) is subject to implied or constructive conditions; or (b) states its consideration, whether performed or promised, or the transaction which gave rise to the instrument, or that the promises or order is made or the instrument matures in accordance with or 'as per' such transaction".

Mercantile argues that the only portion of the writings which could be construed as imposing any condition on the requirement that the purchasers pay under the contract are those that state that (1) the Seller must build the residences within two years of the date of execution of the contract if construction is not already completed, and (2) that such residents shall have appropriate "furniture, appliances, equipment and all accent furnishings of equal quality to those shown or used in the models". Mercantile asserts that such provisions are merely explanations of the consideration which the Seller extends in return for such payment, and that they at most are constructive con-

**1.** Missouri has adopted the 1972 amendments to the UCC, however, such amendments do not take effect until January, 1989, therefore, this issue is to be determined by the 1965 version of Missouri's Article Nine.

ditions, not rendering the writings non-negotiable. In support, Mercantile cites *Carter v. South Texas Lumber Co.*, 422 S.W. 2d 951 (Tex.Civ.App.1967), in which a note was not rendered non-negotiable by the fact that it provided that it was subject to improvements being erected on the described lots. Mercantile cites *Goetz v. Selsor*, 628 S.W.2d 404, 405 (Mo.App.1982), for the proposition that transfers of notes in conjunction with an underlying deed or contract does not destroy negotiability.

HSPOA argues and this Court agrees that the writings are not negotiable instruments because the writings in question contain a conditional promise or order to pay money in that the seller has obligations to perform in the future. The writings also contain a power given by the maker not authorized by the UCC in that the seller may execute an agreement with a time sharing program for a reciprocal exchange of member owners of "Vacation Horizons International"; and, the seller may modify and amend the declaration and bylaws concerning insurance, reconstruction, and repair of the property; also the seller is empowered to make changes with regard to the material and design in the buildings and improvements all as the seller deems advisable.

In *Illinois State Bank v. Yates*, 678 S.W. 2d 819 (Mo.App.1984), a note securing a second deed of trust incorporated the makers right to apply payments to keep current an obligation under a first deed of trust. The condition rendered the note nonnegotiable. In *Jefferson v. Mitchell Select Furniture Co.*, 56 Ala.App. 259, 321 So.2d 216 (1975), a contract contained all of the requisite terms for negotiability, but a reading of the entire document showed it to be a retail installment contract and security agreement with a reservation of title in the vendor. These additional terms made the writing not negotiable. HSPOA argues this case is similar to *Jefferson* because Holiday Interval retained title to the time intervals until all payments were made by

the purchaser although the purchaser could use the interval during the contract term.[2]

Promissory Note Language:

Some of the writings contain a section labeled "Promissory Note". Mercantile asserts that such language reinforces the fact that the writings are intended to be "negotiable instruments", because it indicates clearly to the purchasers that the writings are in the form of and carry the auspices of a promissory note. In the alternative, Mercantile argues that these writings can be severed and the portion of the writing labeled "Promissory Note" can be independently enforced. Missouri courts have held that a promissory note itself is independently enforceable from the document of which it is part. *Illinois State Bank of Quincy v. Pedersen*, 350 S.W.2d 102 (Mo.App.1961), following *Morgan v. Mulcahey*, 298 S.W. 242 (Mo.App. 1927). These Missouri decisions held that separate instruments can be treated separately even though they are written on the same piece of paper. Mercantile asserts that even if the holder of such writings is on notice of certain other matters relating to the generation of such "Promissory Notes" such knowledge does not effect negotiability although it may effect Holder in Due Course status. Mo.Rev.Stat. §§ 400.-3–106; 400.3–302. The bank asserts that the "Promissory Notes", by themselves, satisfy all of the requirements of a negotiable instrument.

*Pedersen* is a pre-code case and it does not purport to interpret the UCC. Furthermore, the clause there being construed in that case gave the owner of the instrument a right to accelerate maturity and take possession of the collateral upon certain conditions. Such terms and omissions do not affect negotiability under the UCC. Mo.Rev.Stat. § 400.3–112(1)(b). Further, Comment 2 following Mo.Stat.Ann. § 400.3–104 (Vernon's) which states that a writing cannot be made a negotiable instrument by contract or by conduct. "... a contract to build a house or to employ a workman, or equally a security agreement

**2.** See also *Wired Music, Inc. v. Wiemann*, 468 S.W.2d 668 (Mo.App.1971); *Insurance Agency*

*Managers v. Gonzales*, 578 S.W.2d 803 (Tex.Civ. App.1979).

does not become a negotiable instrument by the mere insertion of a clause agreeing that it shall be one". If the parties cannot make a writing a negotiable instrument by saying it shall be negotiable in the writing, then adding promissory note type language to an executory contract cannot render such contract negotiable. In *Discount Purchasing Co. v. Porch*, 12 UCC Reporting Service 600 (1973), a retail installment contract had language at the bottom purporting to state an unconditional promise to pay. The contract on the whole, however, was an installment payment contract. The court in that case stated that "the fact that a composite form is employed in which the buyer's promissory note is an integrated part of the sales agreement does not make the agreement negotiable". "Just as you cannot make a 'silk purse from a sow's ear', you cannot make a negotiable instrument from a contract for sale". *Id.*

The writings at issue are labelled at the top "contract" and include mutual executory promises and powers are given to the vendor. Although promissory note type language appears on some of the writing labeled notes, this is inconsistent with the rest of the writing because it purports to state an unconditional obligation to pay money while the rest of the writing contains mutual obligations to be performed in the future, i.e., the purchaser is to make installment payments over a period of time and the seller is to deliver a deed in the future. The purchaser has the use of real property during the term of the contract, the seller is to escrow seventy-five percent of payments if a residence is not yet built, and other future obligations. This contradiction renders the writing ambiguous and ambiguity must be resolved against the author of the writing, *Bradley v. Buffington*, 500 S.W.2d 314, 318 (Mo.App.1973), or in this case, the assignee of the author.

Therefore, due to the conditions contained in the writings, this Court finds that they do not fall within the definition of "negotiable instrument" even with the additional promissory language attached.

(2. *"Instruments" Under Article Nine*

■ The definition of "instrument" in Article Nine includes "any ... writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment". Mo.Rev.Stat. § 400.9–105(1)(g).

HSPOA asserts that contracts such as the writings in question are not ordinarily transferred in the course of business because the assignees cannot perform the obligations under the contract, and that the writings are not the type of collateral intended to be covered by Mo.Rev.Stat. § 400.9–105(1)(g). HSPOA also emphasizes the fact that the purchasers may not assign their interest in the writings without first obtaining consent to such assignment from the Seller.

Land installment sale contracts are not the type of writings which were intended to be included in this section of the Code. This section was meant to be a catchall section covering types of writings which were transferred in the ordinary course of business, but which were not negotiable instruments. Examples of the types of instruments intended to be covered by this section are found in case law. In *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bkrtcy.S.D.Tex.1985), the writing was a promissory note which, by its terms, was "not negotiable" but which could be pledged as security, was the type of writing intended to be covered by this provision. Variable rate notes are another type of writing intended to be included in this provision, because although they are not negotiable instruments, *Centerre Bank v. Campbell*, 744 S.W.2d 490, 494 (Mo.App. 1988), such notes are frequently transferred by endorsement in the secondary mortgage market and would, therefore, qualify as an instrument under the third criterion of Mo.Rev.Stat. § 400.9–105(1)(g).

The court in *In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424 (1980) held that the vendor's lender must file a financing statement to have a perfected security interest

in land installment contract payments and that since only a real estate recording had occurred, the security interest in Freeborn *was deemed unperfected. The court stated, "the method of perfection for notes, which is the transfer of possession to the secured party, is probably inapplicable to installment contracts, since they are evidently not 'instruments' as the UCC employs the term. Hence, an installment contract is correctly understood to be a 'general intangible' in the Code's parlance, and a security interest in it must be perfected by the filing of a financing statement". This reasoning is also followed in the case of* In re S.O.A.W. Enterprises, Inc., *32 B.R. 279 (Bkrtcy.W.D.Tex.1983). In this case, a developer entered into a participation agreement with the bank wherein the bank advanced money and took "agreements for deed". The court rejected the bank's argument that the assignment of the agreements for deed were an outright conveyance entitling the bank to possession of the proceeds under § 541(d). The court characterized the transaction as a loan. The court then characterized the right to receive payments from the agreements for deed as "general intangibles". The court stated that they could not be characterized as "instruments" because the agreements for deed created no right on the part of SOAW to unconditionally demand the payment of money. The court went on to say that the agreements for deed, like the writings in question before this court, cannot be instruments because an instrument may not contain a security agreement and the agreements for deed specifically state that the vendor seller is entitled to retain both the money paid and the real estate in the event of default. The court further noted that an agreement for deed may be assigned by endorsement but ...*

> "As a matter of law, the court holds that the essential difference between the agreement for deed and an ordinary instrument is that an 'instrument' is not usually considered an executory contract. Under an 'instrument', one party has

wholly performed—the lender. The other party—the obligee or debtor, is thereafter obligated to perform in some manner in order to repay the value represented by the instrument, which value he already received. With an agreement for deed, the contract remains wholly executory".

Treatises on the Uniform Commercial Code agree with the reasoning in the *S.O. A.W.* case above. White and Summers, *Uniform Commercial Code* (Third Ed.) 274 (1988), states that

> "[t]he courts generally agree that the seller's interest under a land sale contract is a general intangible subject to Article Nine. Security interests in general intangibles may be perfected by filing a financing statement, but not by possession of the contract".[3]

In *In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424 (1980), the debtor transferred a document which assigned the debtor's rights to receive payments on the underlying real estate contract. *Id.*, 617 P.2d at 426. The deeds were not assigned or transferred. *Id.* Therefore, the secured party held only a document of assignment enforceable only against the debtor, which granted to the secured party only the debtor's rights to receive payments. *Id.* Such rights, absent the holder's possessing the instrument manifesting such rights, are "contract rights" under the UCC, and the filing is required to perfect. Filing in this case provides the only notice to subsequent potential creditors of the existence of the senior lien.

### (3. *Any other writing*

The writings in this case contain mutual executory obligations on the part of the seller and purchaser. For example, the seller agrees that the buyer may occupy the real estate during his time interval during the term of the contract; the buyer agrees to make installment payments and to forfeit payments made in the event of default; the seller agrees to execute a gen-

**3.** See also, *Crichton v. Himlie Properties,* 105 Wash.2d 191, 713 P.2d 108 (1986); *In re Southworth,* 22 B.R. 376 (Bkrtcy.D.Kan.1982); *Matter*

*of Equitable Development Corp.,* 617 F.2d 1152 (5th Cir.1980); *In re Southern,* 32 B.R. 761 (Bkrtcy.D.Kan.1983).

eral warranty deed to buyer, this agreement conditioned on buyer's performance; buyer consents that seller may modify and amend the declaration and bylaws; seller agrees to complete the building within two years and to escrow seventy-five percent of the payments to complete construction. In short, the writing is a bilateral executory contract requiring future performances by both parties.

An instrument evidences an unconditional right to receive money, that is, possession of the writing alone entitles the holder to receive money; but a contract right is a right to receive money under a contract which has not yet been earned by performance. Mo.Rev.Stat. § 400.9–106. At the time of the execution of these writings, the vendor had not performed its obligations. Today some of the buildings have not been built and roads, tennis courts and other common areas are incomplete. Many people who have paid for their time interval have not received deeds. Mercantile has no authority to give a deed to the time interval purchaser whose money it wants, nor is it willing or able to complete the improvements at the resort. It is clear that at the time of the execution of these writings the time interval purchaser's obligations had not yet been earned by performance of Holiday Interval, Inc. or its assignee.

Holiday Interval's right to receive money had not and has not been earned by performance because buildings were under construction at the time of the execution of the contracts and, in fact, not all of the buildings have been completed at this time. Deeds are yet to be delivered. Mercantile has been assigned Debtor's right in the contracts and thus stands in the shoes of its assignor. Payment under the contracts depends upon Debtor's performance, therefore, the writings must be categorized under the 1962 Code as contract rights. As such, these writings could be properly perfected only by filing a financing statement which was not done, thus Mercantile does not hold a perfected security interest in the contracts or their proceeds.

Mercantile has only received a pledge of the writings which manifest the Seller's rights to receive payments from purchasers under the writings. The contract obligations of the Seller-pledgor have not been delegated to Mercantile. Mercantile has only received a pledge of the writings which manifest the Seller's rights to receive payments from purchasers under the writings and such a pledge as collateral in exchange for a loan does not invalidate the contract obligations of the Seller-pledgor. See, Restatement of the Law, Contracts, Second, § 317, 318.

Addressing the non-transferability language in the writings, Mercantile cites *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bkrtcy.S.D.Tex.1985), the court stated that "the language 'of a type which is the ordinary course of business transferred by delivery with any necessary endorsement or assignment' is to be 'construed broadly to include any writing which is treated as a token of the right it represents and therefore is normally delivered to any person to whom the rights are transferred'". *Id.*, at 837. The court noted that even a certificate of deposit which bears a restrictive legend stating that it is non-negotiable is nonetheless, and is as a matter of law, " 'of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment' because 'it may easily be delivered by one party to another in the course of a commercial transaction'". *Id.* at 838, quoting *First Nat'l Bank v. Lone Star Life Insurance Co.*, 524 S.W.2d 525, 533–34 (Tex.Civ. App.1975). The Supreme Court of Arkansas is in accord, stating that "the fact that the certificates were non-negotiable and non-transferrable in no way prevents them from being instruments." *Id.* at 838, quoting, *General Electric Co. v. M & C Mfg. Inc.*, 283 Ark. 110, 671 S.W.2d 189, 190 (1984).

Mercantile also focuses on the policy underlying the filing and perfection provisions of the UCC. The purpose of perfection is to put a diligent searcher on notice of the secured party's claim. J. White and R. Summers, *Uniform Commercial Code*, Vol. 2, p. 328 (3rd Ed. 1988). Mercantile

argues that the writings at issue are the only manifestation of the obligations which flow from the purchaser to the Seller, and therefore represent the only source of such Seller's rights to such payments. Only the holder of such documents has the power to assert the rights of the Seller contained therein, and therefore, no diligent potential creditor would extend credit to the Seller without first demanding to see the writing which would act as collateral for the loan. When the writing was disclosed, the proposed lender would be able to then determine whether there was any pre-existing superior lien on such collateral. Mercantile emphasizes that it is the Seller, and potential subsequent creditors of such Seller, with which the UCC notice provisions are concerned, since the Seller is the debtor herein. The notice requirements are designed to provide at least constructive notice to subsequent potential creditors of a debtor of existing superior liens on property of such debtor. J. White and R. Summers, *Uniform Commercial Code*, Vol. 2, at p. 328. Therefore restriction on the purchasers' rights of transfer are wholly irrelevant.

Even in view of Mercantile's observations, however, this Court finds that the writings in question are not instruments under the third category of Mo.Rev.Stat. § 400.9–105(1)(g) because it is not of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment. Writings of this type are not transferred in the ordinary course of business by delivery. In fact, the agreement specifically prohibits an assignment of the buyer's interest in the contract. A seller's interest in such contract is not ordinarily transferred because the transferee is not in a position to perform the obligations under this bilateral contract, to wit, construct buildings, execute general warranty deeds, etc.

**D. Contract Rights or General Intangibles [4]**

"Contract rights" are defined in Mo.Rev. Stat. § 400.9–106 as any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper.

A contract right covers "those choses in action which may be the subject of commercial financing transactions but which are not evidenced by an indispensable writing". Mo.Rev.Stat. § 400.9–106 (UCC Comment). Courts have defined "indispensable instrument" in accordance with the Restatement of Law, Security § 1 (Comment (e)). Comment (e) defines "indispensable instrument" as "meaning the formal written evidence of an interest in intangibles so representing the intangible that the enjoyment, transfer or enforcement of the intangible depends upon the possession of the instrument". *Wellsville Bank v. Nicolay*, 7 Kan.App.2d 172, 638 P.2d 975, 979 (1982).

The Official Comment to § 9–106 of the UCC states that " 'general intangibles' brings under this Article miscellaneous types of contractual rights and other personal property which are used or may be customarily used as commercial security. Examples are good will, literary rights and rights to performance. Other examples are copyrights, trade marks and patents". The Comments refer to general intangibles as a "catch-all definition". Mo.Rev.Stat. § 400.9–106 (UCC Comment).

Mercantile argues that because the writings are indispensable in any assertion by any holder that it is entitled to receive the payments of money from the purchasers under the writings, such writings are indispensable instruments and are therefore not contemplated as within the term "contract

---

**4.** The transaction in question occurred under the 1962 Code in force in Missouri at the time. Many of the decisions refer to the 1972 Code which was adopted in many states before Missouri. The classification "contract rights" is described in the 1962 Code but is not mentioned in the 1972 Code. In the 1972 Code, "contract rights" fall into the catch all category of general

intangibles or, according to some decisions, are the same as an "account". For purposes of this discussion, the distinction is moot because contract rights, general intangibles, and accounts all require the filing of a financing statement with the Secretary of State in order to be perfected under both versions of the Code.

rights" as it is defined under the UCC. Mercantile also argues, without citing any authority that the term "contract right" under the UCC was designed to cover only intangible rights not manifested in writing. Since the writings at issue are in writing, they are "instruments"; not "contract rights". The indispensability of such writings may be tested simply by imagining the situation of an alleged "holder" of such writings attempting to enforce payment without possession of such writings.

However, the court in *In re Southern*, 32 B.R. 761 (Bkrtcy.D.Kan.1983) explained the difference in perfection under the UCC between assigning the mere right to receive payments (a general intangible) from the assignment of the document which evidences such right (an instrument) by stating that "the right to receive payments under a contract for deed is a 'general intangible' [citations omitted]. A general intangible can be perfected only by a UCC–1 filing with the Secretary of State [citations omitted]. The assignment of the promissory note itself is an assignment of an 'instrument' as defined in K.S.A. § 84–9–105(i) (Supp.1981) [citations omitted]." *Id.* at 765. *In re Southworth*, 22 B.R. 376 (Bkrtcy.D.Kan.1982), also involved an assignment of a mere right to payment rather than the document manifesting such right, and is therefore correctly in accord. *Id.*

In *Wellsville Bank v. Nicolay*, 638 P.2d at 979, involving rights of a partner to a portion of the proceeds from the sale of partnership property, the court explained that "the courts generally recognize that if the document delivered does represent the right to the extent that it stands in the place of, or embodies, or reifies, the intangible, a pledge of the document amounts to the pledge of the right". *Id.* (quoting, *Walter v. Piqua State Bank*, 204 Kan. 741, 466 P.2d 316 (1970). The court held that a document of assignment of rights to receive money under another contract or deed "does not embody the rights assigned and is therefore not an indispensible writing". *Id.*

## CONCLUSION

This court determines that both types of writings are not instruments since they do not fall within the definition of "negotiable instrument" (§ 400.3–104); nor do they meet the definition requirements of an instrument under Article Nine (§ 400.9–105(1)(g)). Furthermore, a land installment sale contract is not transformed into an "instrument" by the addition of promissory note language. The writings are "contract rights" which can only be perfected by filing.

Since Mercantile has not perfected its security interest by filing, it follows it is unsecured and the Court so holds. Since this was the threshold issue in Mercantile's Motion To Lift Stay, that Motion must be and is ruled against Mercantile.

The foregoing Opinion shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.

SO ORDERED.