McMILLIAN, Circuit Judge.
Mercantile Bank National Association (“Mercantile”), Colonial Bank (“Colonial”), Jack E. Brown (“Trustee”), Holiday Intervals, Inc. (“Holiday” or “debtor”), and the Holiday Shores Property Owners Association (“Holiday Owners”) appeal a final judgment of the United States District Court for the Western District of Missouri, granting in part and denying in part a motion to lift a bankruptcy stay, In re Holiday Intervals, Inc., No. 89-4135-CV-C-5 (W.D.Mo. Sept. 13, 1989) (order) (.Holiday Intervals), affg in part and rev’g in part 94 B.R. 594 (W.D.Mo.1988). On appeal, Mercantile and Colonial (collectively “the banks”) argue that the district court erred in denying their motion to lift a bankruptcy stay as to certain installment contracts pledged to the banks as collateral. Holiday, its trustee, and Holiday Owners have cross-appealed and argue that the district court erred in granting the banks’ motion as to other installment contracts. For the reasons stated below, we hold that the banks have not perfected their security interest in any of the contracts assigned to them. Accordingly, we affirm in part, reverse in part, and remand this case to the district court with directions to reinstate the bankruptcy court’s judgment.
I. Facts
The relevant facts in this case are not in dispute. Holiday sold “time share” deeds for the “Holiday Shores” resort it was developing at the Lake of the Ozarks. These deeds entitled buyers to spend one week per year in one of Holiday’s units. Many of the buyers agreed to pay the purchase price through installment contracts. Some of these installment contracts contained a separate promissory note section which repeated the buyer’s installment obligations in the form of a promissory note, while other contracts contained no promissory note section.
Holiday obtained financing for construction of the units by assigning its copies of the installment contracts and promissory notes to the banks. The banks did not seek to perfect their security interests in the installment contracts by filing financing statements, but instead assumed that they had perfected their security interests by possession of the buyers’ installment contracts and promissory notes.
After Holiday ran into financial difficulties, Holiday Owners (one of Holiday’s creditors) and various other creditors filed an involuntary bankruptcy petition against Holiday. Holiday Owners has operated the resort since Holiday’s failure.
When a bankruptcy petition is filed, claims against the debtor’s estate are automatically stayed. See 11 U.S.C. § 362 (1988). In order to obtain the installment contract proceeds, Colonial and Mercantile separately moved for relief from the automatic stay, on the ground that they ob *502 tained perfected security interests in the installment contracts through possession of the contracts. See In re Southern Equip. Sales Co., 24 B.R. 788, 793 (D.N.J.1982) (automatic stay inapplicable to perfected security interests). In the alternative, the banks argued that even if they had not perfected their security interests as to all installment contracts, they had at least done so as to those installment contracts containing promissory notes. The bankruptcy court rejected both arguments and denied the banks’ motion for relief from the automatic stay. See Holiday Intervals, 94 B.R. at 602.
The district court affirmed in part and reversed in part, holding that the banks had perfected their security interests in those installment contracts which contained promissory notes, but not in the other installment contracts. All parties have appealed the district court’s ruling. The banks argue that even those installment contracts which did not contain promissory notes are “instruments” within the meaning of § 9-305 of the Uniform Commercial Code (“U.C.C.”), Mo.Rev.Stat. § 400.9-305 (1986) (providing that security interest in “instruments” may be perfected without filing if the secured party takes possession of the collateral), and § 9-105 of the U.C.C., Mo.Rev.Stat. § 400.9-105(l)(g) (defining “instrument”). By contrast, Holiday, Holiday Owners, and the trustee argue that even the installment contracts which contained promissory notes are not “instruments” under the U.C.C. See Mo. Rev.Stat. § 400.9-302 (requiring filing to perfect security interests unless stated otherwise). Each of these arguments will be addressed in turn.
II. Are All the Installment Contracts “Instruments?”
Section 9-105(l)(g) of the U.C.C., Mo.Rev.Stat. § 400.9-105(l)(g), defines an instrument as, inter alia,[1] any writing “which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment.”
The bankruptcy court held that the installment contracts were not instruments for two reasons. First, “[a]n instrument evidences an unconditional right to receive money, that is, possession of the writing alone entitles the holder to receive money,” while an installment contract requires a seller to earn money through performance. 94 B.R. at 600. Second, real estate contracts “are not transferred in the ordinary course of business by delivery ... because the transferee is not in a position to perform the obligations under this bilateral contract, to wit, construct buildings, execute general warranty deeds, etc.” Id. at 601. The bankruptcy court accordingly found that the contracts were “contract rights” under Mo.Rev.Stat. § 400.9-106, which may be perfected only by the filing of a financing statement. 94 B.R. at 601-02. The district court agreed, on the basis that land sale contracts are generally not “instruments” under Article 9 of the U.C.C. See slip op. at 11-12.
As a rule, “courts generally agree that the seller’s interest under a land sale contract is a general intangible subject to Article Nine [of the U.C.C.]. Security interests in general intangibles may be perfected by filing a financing statement, but not by possession of the ‘contract.’ ” 2 J. White & R. Summers, Uniform Commercial Code § 23-7, at 274 (3d ed. 1988) (“White & Summers”). See also In re Simpson, 56 B.R. 586, 588 (D.N.M.1986) (rejecting view that bank’s interest in real estate contracts is an “instrument” under Article 9) (Simpson); In re Matter of D.J. Maltese, Inc., 42 B.R. 589, 592 (E.D.Mich.1984) (contract for the sale of real estate is a “general intangible,” which court defined as property "other than goods, accounts, chattel paper, documents, instruments and money”) (citation omitted) (emphasis added), cited in In re I.A. Durbin, Inc., 46 B.R. 595, 599 (S.D.Fla.1985). Thus, it would appear that the installment contracts assigned to the banks were not “instru *503 ments” and that the banks therefore have not perfected their security interests merely by obtaining possession of such contracts.[2]
The banks cite numerous cases in support of their contention that land sale contracts are “instruments” as defined in § 9-105. However, most of the cases cited by the banks do not involve bilateral contracts, and none of them involve land sale contracts.[3] See Smith v. Mark Twain Nat’l Bank, 805 F.2d 278, 285 (8th Cir.1986) (repurchase agreement and certificate of deposit held to be “instruments” where they “constituted an unconditional promise by Bank to repay Debtor, and were, in substance and legal effect, promissory notes”); In re Staff Mortgage & Inv. Corp., 625 F.2d 281, 284 (9th Cir.1980) (promissory notes secured by deeds of trust held to be “instruments”); Matter of Staff Mortgage & Inv. Corp., 550 F.2d 1228 (9th Cir.1977) (same); In re Coral Petroleum, Inc., 50 B.R. 830, 837-39 (S.D. Tex.1985) (promissory note); International Harvester Co. v. Peoples Bank & Trust Co., 402 So.2d 856, 865 (Miss.1981) (contract to build trucks); Citizens Nat’l Bank v. Bornstein, 374 So.2d 6, 9-10 (Fla.1979) (certificate of deposit); Walton v. Piqua State Bank, 204 Kan. 741, 466 P.2d 316 (1970) (passbook may be pledged by delivery).
Accordingly, we endorse the general rule and hold that land sale installment contracts are not instruments under the U.C.C.,[4] and affirm that part of the district court’s opinion holding that the banks have not perfected their security interest in such contracts.
III. Do the Promissory Notes Turn Some of the Land Sale Contracts into “Instruments?”
As noted above, some of Holiday’s installment contracts contained promissory notes. Although the promissory notes, standing alone, were undoubtedly instruments, the bankruptcy court held that the promissory note language did not turn the installment contracts into instruments. See 94 B.R. at 598, citing Discount Purchasing Co. v. Porch, 12 U.C.C. Rep.Serv. 600, 607 (Tenn.App.1973) (Discount Purchasing ) (“Just as you cannot make a ‘silk purse from a sow’s ear,’ you cannot make a negotiable instrument from a contract for sale.”). The district court disagreed, holding that the promissory notes should be considered as "separate and distinct writings,” slip op. at 7, based on Missouri cases holding that where a contract contains both a promissory note and a chattel mortgage, each should be considered separately. See, e.g., Illinois State Bank v. Pedersen, 350 S.W.2d 102, 108 (Mo.Ct.App.1961) (Illinois State Bank) (note and mortgage must be considered separately); Morgan v. Mulcahey, 298 S.W. 242, 244 (Mo.Ct.App.1927) (.Morgan) (same).
The district court initially noted that in Morgan, the promissory note and chattel mortgage were “on a single piece of paper which was signed but once at the bottom.” Slip op. at 6. Nevertheless, the Morgan court held that “although the two statements are written upon the same piece of paper, each is to be considered and interpreted as a complete entity”, id. at 6, citing Morgan, 298 S.W. at 244. According to the district court, it logically followed that the contract and the note are “separate and distinct” writings where, as here, each agreement “has its particular provisions and each is separately signed by the appropriate parties.” Id. at 7. The court then distinguished Discount Purchasing because (1) it was based on Tennessee rather than Missouri law, (2) the contract and the promissory note in that case were not *504 separately labelled, and (3) the Discount Purchasing case “decided only that the writing before it was not a negotiable instrument”, slip op. at 8 (emphasis in original). Finally, the district court acknowledged the Missouri “rule of construction allowing contemporaneous writings to be read together to discern the rights of the maker of a note”, id. at 9, but explained that this rule “does not hold that the separate contemporaneous writings are a single instrument”, id. at 9-10, citing Local Acceptance Co. v. Kinkade, 361 S.W.2d 830, 834 (Mo.1962).
On appeal, the trustee and his co-appellants rely on the general rule that “when instruments are executed at the same time, for the same purpose, and in the course of the same transaction, they are to be considered as one instrument”, Owings v. Mackenzie, 33 S.W. 802, 805, 133 Mo. 323, 334 (1896) (Owings), cited in Illinois State Bank, 350 S.W.2d at 106-07. Based on this rule, the trustee and his co-appellants argue that Morgan and Illinois State Bank are applicable only when the promissory note is attached to a chattel mortgage or some other type of unilateral contract.
In fact, the Missouri courts have been willing to construe notes and contracts as separate documents even where the contract imposed obligations on both parties. In Owings, the plaintiff sold land to Mackenzie, who in return gave her two promissory notes. One of the notes matured in two years, and the other matured in three years. The three-year note was secured by a deed of trust which contained an “acceleration clause” providing that if Mackenzie or his assignees defaulted in the payment of either note, both notes would become due and payable immediately. Owings, 33 S.W. at 803. Mackenzie assigned the property to Tilhoff, Green, and Muelbach, who then assigned the property to Canine. At the time the two-year note matured, Canine was the owner of the property. Shortly thereafter, Canine and plaintiff agreed to extend the time for payment of the note, despite the existence of the acceleration clause. After both notes matured, plaintiff foreclosed on the property. The proceeds of the foreclosure sale paid the two-year note in full, but paid only part of the three-year note. Plaintiff then sued Mackenzie, Tilhoff and Muelbach for the deficiency on the three-year note. The defendants argued that they were not liable for the deficiency, because (1) the deed’s acceleration clause mandated foreclosure at the time the two-year note became due, and (2) if the property had been sold at the time the two-year note became due, the proceeds would have been sufficient to pay both notes in full. In support of the first contention, the defendants argued that the “notes and deeds of trust securing them form but one and the same transaction ... [and therefore] the note in suit becomes due at an earlier day than three years after its execution (as indicated on its face) by the happening of the contingency of the nonpayment of the two-year note at maturity”, id. 33 S.W. at 805.
The Missouri Supreme Court rejected the defendants’ argument, stating that:
[i]f the note in suit and deed of trust securing same are to be considered as one entire contract and used together as such, as if the promises of one and the provisions of the other were all embodied in one writing, what would become of the instrument we now call the note, with all its essential characteristic qualities — in fact, all that entitled it to that designation? Read the two instruments together as one, and you have no note, with which you invoke the rules governing such instruments to defeat the obligations of the defendants thereunder in this case.
Id. Thus, Owings stands for the proposition that where the time for payment of a note is extended, it does not become due until the creditor chooses to foreclose, even if an accompanying deed contains an acceleration clause.
On the other hand, the trustee and his co-appellants rely on Brooks v. Sullivan, 728 S.W.2d 298 (Mo.Ct.App.1987) {Brooks). In Brooks, the defendants contracted to purchase real estate from the plaintiff. The contract provided that the defendants would pay for the real estate in install *505 ments and that the defendant’s debt would be evidenced by a non-negotiable promissory note. The contract further provided that if the defendants defaulted, the plaintiff would be entitled to the premises and to all payments already made. The defendants defaulted on the contract, and the plaintiff took over the premises and sued for the balance due on the promissory note, despite the contract’s provision that the plaintiff was to retain payments already made “in full satisfaction” of the defendants’ debt. Id. at 299. The defendants moved for a directed verdict, on the basis that the plaintiff’s decision to take advantage of the contract’s liquidated damages provision barred a suit on the promissory note. The trial court directed a verdict for the defendants, and the Missouri Court of Appeals affirmed, holding that because “the [promissory] note and contract were executed concurrently and as a part of the same transaction ... they must be considered together.” Id. at 300. Thus, Brooks stands for the proposition that where a creditor has the right to elect his or her remedies, a note and an installment contract may be considered as one document. See also Jenkins v. Thyer, 760 S.W.2d 932, 935-36 (Mo.Ct.App.1988) (where deed of trust contains acceleration clause, clause is valid even if similar clause in promissory note is not applicable).
Neither Brooks nor Owings is precisely on point. Brooks involved an “election of the remedies” situation, while Owings involved an attempt to extend the time for payment of a promissory note. Even the cases relied on by the district court deal with the issue of negotiability rather than the definition of an “instrument” under § 9-105 of the U.C.C. See Illinois State Bank, 350 S.W.2d at 106-08; Morgan, 298 S.W. at 244. In sum, we are faced with a case of first impression, and must decide whether the Missouri Supreme Court would consider this case to be more analogous to Brooks or to Owings. Because Brooks, unlike Owings, clearly involves an installment contract, we are inclined to believe that the Missouri Supreme Court would probably apply Brooks by analogy. We therefore hold that under Missouri law, a document containing both a land sale installment contract and a promissory note should be considered as one document, and that such a document is therefore not an “instrument” under § 9-105. If, as we believe, the contract is not an instrument, the banks’ failure to file a U.C.C. financing statement leaves their security interest un-perfected and bars them from obtaining relief from the bankruptcy stay.
Accordingly, we affirm the district court’s holding that the banks’ motion for relief from the stay should be denied as to those contracts not containing promissory notes, reverse the district court’s holding that the motion should be granted as to those contracts containing promissory notes, and remand this case to the district court for further proceedings consistent with this opinion.

. Section 400.9-105 also defines negotiable instruments and securities as "instruments," but the banks do not claim that the installment contracts at issue fall into either of these categories, except insofar as those contracts contain promissory notes.

.The bankruptcy court described the contracts as "contract rights” rather than “general intangibles.” In re Holiday Intervals, Inc., 94 B.R. 594, 601-02 (W.D.Mo.1988). The court explained, however, that the distinction between "contract rights” and "general intangibles” was abolished after the transactions at issue took place. Id. at 601 n. 4.

. We therefore decline to address the banks' contention that other cases cited by the trustee and his co-appellants are also distinguishable.

. We decline to decide at this time whether other bilateral contracts may constitute instruments within the definition of § 9-105.